A96A2130. BOOTH v. FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY et al.
(477 SE2d 376)

ELDRIDGE, Judge.

Appellant Ronald Lynn Booth appeals from the granting of a motion for summary judgment in his suit against deputy sheriff William Dixon for breach of the conditions of Dixon's sheriff's bond. Pursuant to OCGA § 45-4-26, appellant names as additional parties to this action the Sheriff of Richmond County and his surety. This case arose from the following set of facts:

On February 24, 1992, appellant, an African/American man, was driving a black BMW on Wrightsboro Road in Augusta; Paul Ezernack, Jr., a Caucasian/American man who is not named in this action, was driving a red Ford S-10 pickup truck on Wrightsboro Road. The two men were traveling in the same direction, with appellant in the left lane and Ezernack in the right; both were heading for a point on Wrightsboro Road where "merge" becomes the operative term, and the two lanes become one. Apparently, appellant and Ezernack were each aware of the presence of the other, but neither would give way. At the last minute, Ezernack sped up and pulled in front of appellant's vehicle. The effect of Ezernack's actions upon appellant's BMW has varied widely with the telling.[1] However, the net result is not in dispute: appellant followed Ezernack home, parked his BMW, pulled out a .223 assault rifle, and entered Ezernack's property. The two men had words. Thereafter, each man

---

[1] To the initial reporting officer, appellant claimed Ezernack cut in front of him and caused his BMW to skid, with no mention of contact between the vehicles; to deputy Dixon, appellant claimed that Ezernack's truck hit appellant's BMW; to a newspaper reporter, appellant claimed that Ezernack's actions caused appellant's BMW to strike the truck; to Captain Weaver, appellant claimed that Ezernack managed to pull in front of his BMW, and he was not sure if the two vehicles had collided or not; to the 911 operator, appellant claimed Ezernack *tried* to run his BMW off the road; before this Court, appellant claims Ezernack *did* run his BMW off the road.

called the Richmond County Sheriff's Department from his home.

Paul Ezernack's call to the Sheriff's Department came in first, and Deputy Mark Bowen was dispatched to Ezernack's home; Ezernack reported appellant for coming onto his property with a rifle. While taking the report from Ezernack, appellant's call to the Sheriff's Department came in; Deputy Bowen was then sent to appellant's home to take his report. Appellant reported Ezernack for cutting him off on Wrightsboro Road; at the time, appellant made no reference to an accident or collision between the vehicles, nor did appellant claim that his vehicle had been run off the road.

Deputy Bowen was unsure about how to proceed with the information he had been given. From appellant's house, Bowen telephoned defendant/appellee Deputy Sheriff William Dixon to ask for advice. Deputy Dixon was assigned to the violent crimes division of the Sheriff's Department and was the violent crimes investigator on duty at the time. As part of his duties, Deputy Dixon neither investigated nor brought charges for traffic offenses. Deputy Bowen related the course of events to Dixon. During the conversation, Dixon inquired as to the race of the two subjects; thereafter, Deputy Dixon twice referred to the appellant by a vulgar racial epithet that does not bear repetition herein. In addition, the following conversation ensued: "[Bowen]: I'll tell you what: Can I give you a number to talk to one of — talk to the other guy (Ezernack) and just see what all he says? And if you'll call me on the radio and tell me where to go from there, I'll do it. [Dixon]: Yeah. Give me the guy in the red truck's name."

Thereafter, Deputy Dixon did as Bowen had requested and called Ezernack. Dixon advised Ezernack that he needed to come in to the Sheriff's Department to give a statement, which Ezernack did that evening. After taking Ezernack's statement, Dixon asked him if he wished to press charges against appellant; Ezernack stated that he did wish to press charges. Deputy Dixon then conferred with Mary Kitchens in the Sheriff's Department warrant division; after hearing the details of the incident, Ms. Kitchens advised that she would issue a warrant for appellant's arrest for the offense of misdemeanor criminal trespass. Thereafter, Deputy Dixon answered another, unrelated call and left Ezernack to obtain the criminal warrant against appellant pursuant to Ezernack's complaint. Ezernack filled out and signed the arrest warrant, and appellant was arrested by Sheriff's Deputy Robert Harrison on Thursday, February 27, 1992, for the offense of criminal trespass; he posted bond almost immediately.

That same day, Deputy Dixon called appellant at home for an interview with regard to Ezernack's complaint; that brief telephone call is the only contact between appellant and defendant/appellee Dixon. It was during this call two days after the incident that appel-

lant first informed a law enforcement officer that Ezernack's truck had actually struck appellant's BMW.

Appellant then contacted Captain Richard Weaver from the Sheriff's Department traffic division in order to report the accident which allegedly occurred during the incident with Ezernack. Captain Weaver and Deputy Bowen investigated appellant's complaint, which investigation included repeated visual inspections of the two vehicles involved; no evidence of a collision between appellant and Ezernack's vehicles could be found. It was Captain Weaver's decision that insufficient probable cause existed to support the issuance of a warrant for the arrest of Paul Ezernack pursuant to appellant's complaint.

Some days later, appellant discovered that the original telephone conversation between deputies Bowen and Dixon on the day of the incident had been recorded.[2] The contents of the taped conversation revealed Deputy Dixon's use of racial epithets, which prompted appellant to file a complaint with the Richmond County Human Relations Commission. In his complaint, appellant requested an apology from Deputy Dixon and that the criminal trespass charge against him be dropped. Thereafter, the criminal trespass charge against the appellant was nol prossed, and Deputy Dixon apologized to appellant. In addition, the Sheriff's Department conducted an internal investigation of appellant's complaint regarding Deputy Dixon. Through the investigation it was determined that Dixon's use of racial slurs violated Rule 81-1.38(A) of the Sheriff's Department Personnel Policies and Procedures; Deputy Dixon was suspended for thirty working days, six weeks, without pay.

1. Appellant contends that Deputy Dixon's reference to appellant in racially offensive language during the course of an official conversation with another deputy was a violation of appellant's Fourteenth Amendment rights under both the United States and Georgia Constitutions and was, thus, a breach of the conditions of Dixon's deputy bond.

This Court abhors Deputy Dixon's use of racial obscenities. "The factor of racial prejudice has been formally and officially squelched in our society after long and arduous struggles. Where it remains informally, it cannot be condoned." *Kornegay v. State*, 174 Ga. App. 279, 282 (329 SE2d 601) (1985). However, our distaste for the deputy's use of racial epithets and our empathy with appellant's reaction upon discovering the contents of the taped conversation cannot relieve appellant of his burden to establish as a matter of law a permissible theory of recovery against the deputy's bond. *Thompson v. Huckabee*

---

[2] According to appellant, the conversation was recorded accidentally by his three-year-old son who had been playing with the answering machine.

*Auto Co.*, 190 Ga. App. 540 (379 SE2d 411) (1989); *Grossberg v. Judson Gilmore Assoc.*, 196 Ga. App. 107 (395 SE2d 592) (1990). "[T]here are certain unappealing aspects to suit on a [deputy's] bond." *Thompson v. Spikes*, 663 FSupp. 627, 642 (S.D. Ga. 1987). A suit on a deputy's bond is an action in contract for the tortious acts of the deputy in the performance of his official duties. *Thompson v. Spikes*, supra. Because this cause of action is in contractu, it cannot be joined with a tort action against the deputy individually. *Thompson v. Spikes*, supra; *Gay v. Healan*, 88 Ga. App. 533 (77 SE2d 47) (1953). Moreover, acts deemed not to be official cannot form the basis for imposition of liability on the bonding company, and recovery is available only for those acts of the deputy that are performed by virtue of or under color of his office. *Thompson v. Spikes*, supra; *Culpepper v. U. S. F. & G. Co.*, 199 Ga. 56 (33 SE2d 168) (1945); *Johnson v. U. S. F. & G. Co.*, 93 Ga. App. 336 (91 SE2d 779) (1956).

In the case sub judice, the use of racial epithets, by itself, does not state a cause of action upon which recovery may be grounded since "name-calling" is not recognized as a tort under Georgia law. *Bekele v. Ryals*, 177 Ga. App. 445, 446 (339 SE2d 655) (1986). The fact that it was done by a deputy sheriff, while extremely disturbing, does not create an independent tort where one did not exist before.

Further, pretermitting the viability of a suit against Deputy Dixon, individually, for emotional distress caused to the appellant, Dixon's use of racial slurs in his conversation with Deputy Bowen cannot be considered the type of "official act" performed under color of office that would permit recovery on Dixon's bond; at the time of the telephone conversation, Deputy Dixon had no official business with appellant, nor did Dixon attempt to exercise toward him any official authority. *Culpepper v. U. S. F. & G.*, supra at 58. "[W]e can not change the law on account of sympathy." *Watson v. Thompson*, 185 Ga. 402, 406 (195 SE 190) (1938). Thus, this Court is constrained to find that Deputy Dixon's use of racial epithets during his telephone conversation with Deputy Bowen, while deservedly punished by the Sheriff's Department, does not give rise to a cause of action that would allow for a recovery on the deputy's bond. OCGA § 45-4-24; *Culpepper v. U. S. F. & G.*, supra at 58, 59; see *Johnson v. U. S. F. & G.*, supra at 340. The trial court was correct in granting summary judgment on this ground.

2. Appellant next contends that Deputy Dixon breached the conditions of his bond by violating the Equal Protection Clauses of both the United States and Georgia Constitutions when Deputy Dixon failed to take a statement from or provide advice to appellant, a black man, while Dixon aided and advised Ezernack, a white man, in taking out a warrant against appellant.

An essential element in a cause of action against a deputy's bond

is the existence of a duty owed by the deputy toward the complainant. OCGA § 45-4-24; *Culpepper v. U. S. F. & G.*, supra. "There was here no breach of the bond unless the act which caused the injury was either a failure to perform an official duty, or the improper or negligent performance of a duty imposed by law." *Culpepper v. U. S. F. & G.*, supra at 58. Moreover, except where a special relationship exists, the deputy's duty must run specifically to the complainant; "liability does not attach where the duty owed by the [deputy] runs to the public in general and not to any particular member of the public." *City of Rome v. Jordan*, 263 Ga. 26, 27 (426 SE2d 861) (1993); *Culpepper v. U. S. F. & G.*, supra at 59.

In the case sub judice, appellant failed to present any evidence to demonstrate a duty owed by Deputy Dixon to appellant so as to permit a recovery on Dixon's bond based on a breach of that duty. Deputy Bowen was dispatched to appellant's residence to handle appellant's complaints, not Deputy Dixon. Further, Deputy Bowen and Captain Weaver investigated appellant's belated contention that there was a collision between the two vehicles and took appellant's statements thereon. There is simply no evidence from which one could conclude that Deputy Dixon ever had a duty to advise appellant or to take a statement from him. Deputy Dixon did not even handle traffic offenses; thus, his lack of participation in the investigation of appellant's traffic-related complaint was irrelevant.

In addition, there is nothing in the record to support appellant's contention that Deputy Dixon chose to aid and advise Ezernack in obtaining an arrest warrant for appellant because Ezernack is a white man and appellant is a black man. The record shows that Deputy Dixon did not "select" between the two men; Deputy Bowen asked Dixon to deal with Ezernack's complaint. Further, the evidence demonstrates that Ezernack, not Dixon, made the decision to press charges against the appellant and pursued that avenue; Deputy Harrison, not Dixon, arrested appellant; Captain Weaver, not Dixon, decided that an arrest warrant should not issue for Paul Ezernack.

Appellant has failed to offer any evidence that Deputy Dixon had a duty under the law that ran specifically to appellant, which is an essential element in a cause of action against a deputy's bond. In a motion for summary judgment "if there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Thus, the trial court's granting of appellee's motion for summary judgment was correct.

*Judgment affirmed. Beasley, C. J., and Blackburn, J., concur.*

DECIDED OCTOBER 16, 1996.

*Craig T. Jones*, for appellant.
*Burnside, Wall, Daniel, Ellison & Revell, James W. Ellison*, for appellees.