A97A2191. COFFEY et al. v. BROOKS COUNTY et al.
(500 SE2d 341)

BIRDSONG, Presiding Judge.

This is an appeal, inter alia, of an order granting summary judgments to appellees Brooks County et al. This appeal arises from a suit for money damages for wrongful death and injuries sustained when several appellants wrecked their vehicles in a washed out section of road, which appellants claim, inter alia, was improperly inspected, maintained and/or barricaded by law enforcement and road department employees of Brooks County. The road washed out on the night of the incidents, during the course of an unusually heavy rainstorm. Appellees fall into three groups: (a) employers — Brooks County and Sheriff Chafin; (b) road superintendents and employees; and (c) deputy sheriffs. This case involves various claims based on appellees' omissions, rather than any affirmative act of negligence by them directly causing the death and injuries at issue. *Held*:

1. Pursuant to the public duty doctrine " 'liability does not attach where the duty owed by the governmental unit runs to the public in general and not to any particular member of the public(,) (except where there is) a special relationship between the governmental unit and the individual giving rise to a particular duty owed to that individual.' " *City of Rome v. Jordan*, 263 Ga. 26, 27 (1) (426 SE2d 861). For a special relationship to exist, each of the following requirements must be satisfied: "(1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party; (2) knowledge on the part of the municipality that inaction could lead to harm; and, (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking." Id. at 29 (2). The public duty doctrine, however, has been limited in application to situations involving the duty owed by a governmental entity "to provide police protection to individual citizens." *Dept. of Transp. v. Brown*, 267 Ga. 6, 8 (3) (471 SE2d 849); accord *Hamilton v. Cannon*, 267 Ga. 655, 656 (1) (482 SE2d 370). The public duty doctrine likewise appears to have been limited to situations involving the acts or omissions of third parties whose behavior may be unpredictable. Id. But, this limitation apparently is not so narrow as to limit the doctrine's application only to unpredictable *criminal* acts committed by third parties.

Whatever limitation was intended by the majority in *Hamilton*, supra, and *Brown*, supra, it appears that they have limited the public

duty doctrine so as to exclude from its circumscription public servants other than those engaged in law enforcement activities or who are responsible, under respondeat superior principles, for the acts of law enforcement personnel. Compare *Hamilton*, supra at 656 (2) and 657-659 (dissent). In this context, the law enforcement appellees in the case at bar are Brooks County (to the extent its alleged liability is based on the negligent acts and omissions of the sheriff and his deputies), the sheriff, and his deputies. The public duty doctrine would not be applicable to any other appellees in this litigation, as they would not be providing "police protection" to the public within the meaning of *Hamilton*, supra and *Brown*, supra.

We further find, as a matter of first impression, that "police protection" is a concept which is broader in scope than the mere providing of protection to the public against third-party criminal activity and includes the provision of certain other *protective* police services. However, in view of the somewhat imprecisely defined limitations in *Hamilton*, supra, and *Brown*, supra, the doctrine's current scope will have to be established on a case-by-case basis. If the public duty doctrine applies in this case, law enforcement personnel will, in effect, be immune from liability as there exists no special relationship, within the meaning of *City of Rome*, supra, between the police and any of the appellants.

This Court has construed the public duty doctrine to include police protection provided to the general public against the effects of detected hazardous conditions on the roadways of this state caused by the negligence of some third-party persons or entities. Compare *Tilley v. City of Hapeville*, 218 Ga. App. 39 (459 SE2d 567), cert. vacated, 220 Ga. App. 916. We cannot accept appellees' contention that appellants' claims were predicated solely upon a hazardous situation caused by highway department personnel rather than by nature. Certain other states, however, which utilize the public duty doctrine, have employed it when the police are attempting to protect the general public against the effects of hazardous conditions caused by nature (acts of God). Compare *Bradley v. Board of County Commrs.*, 890 P2d 1228, 1232 (8) (Kan. App.) with *Mullins v. Town of Clarkstown*, 583 NYS 652, 654 (3 & 4), citing *Cuffy v. City of N. Y.*, 69 NY2d 255 (513 NYS2d 372).

Under the facts of this case, including the nature of the hazardous condition and the policies of the law enforcement personnel regarding such hazardous highway conditions, we find that the law enforcement officers were engaged in police protection of the public when they inspected and elected whether to blockade public roads within the county which were in various stages of flooding. However, because the recent cases of *Hamilton,* supra and *Brown*, supra, limit the public duty doctrine in this state to those situations involving the

duty owed by a governmental entity to provide police protection to *individual citizens* and, because *Brown*, supra, also appears to limit the public duty doctrine to police protection situations involving the acts or omissions of *third parties* whose behavior may be unpredictable, we are compelled not to extend the public duty doctrine to provide immunity from liability to the law enforcement officers engaged in the *protection* of the public at large from hazardous conditions caused by the weather rather than by a third party. Thus, unless the Supreme Court revisits this issue, future protection, by the public duty doctrine, of law enforcement officials in situations involving hazardous or emergency conditions such as this may depend upon the will of the General Assembly.

2. The uncontroverted evidence establishes there was a major storm in the area; numerous sections of public roads were flooding simultaneously, and law enforcement officials and highway supervisors and employees were working to barricade and close those roads considered to impose the most danger to the public. The sheriff's dispatchers were so busy receiving radio and telephone calls from concerned citizens and law enforcement officers that all calls were not recorded.

The doctrines of sovereign immunity and official immunity are promulgated in Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983, as amended in 1991. Pursuant to this constitutional provision, county employees have been included within that class of persons entitled to official immunity from suit for discretionary acts performed without malice in their official capacity. *Kordares v. Gwinnett County*, 220 Ga. App. 848, 851 (470 SE2d 479), citing *Woodard v. Laurens County*, 265 Ga. 404, 406 (456 SE2d 581). But, no official immunity is provided for ministerial acts negligently performed or for discretionary acts performed with actual malice or an intent to injure. *Crisp County School System v. Brown*, 226 Ga. App. 800, 802 (2) (487 SE2d 512). Appellants contend that the various county employees were all engaged in the performance of ministerial acts and thus could be held liable for their negligent acts or omissions. Whether acts are discretionary or ministerial depend on the circumstances of the particular case. Id.

In view of the effect of recent holdings of our Supreme Court, as recognized by this Court in some recent cases, there exists a viable issue regarding the extent to which county employees are cloaked with the protection of sovereign as well as official immunity. As clarified in *Gilbert v. Richardson*, 264 Ga. 744, 750 (4) (452 SE2d 476), any cause of action averred against a county officer or employee in his official, as opposed to his personal, capacity "is in reality a suit against the state and, therefore, involves *sovereign* [governmental] immunity." (Emphasis supplied.) *Crisp County*, supra at 802 (1).

(a) Article IX, Section II, Paragraph IX of the Georgia Constitution of 1983 provides: "'[T]he General Assembly may waive the immunity of counties, municipalities, and school districts by law.'" Compare Art. I, Sec. II, Par. IX (a) and (d). "Considering the 1991 [constitutional] amendment [to Art. I, Sec. II, Par. IX,] as a whole, we hold that sovereign immunity is waived by any legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver." *Gilbert*, supra at 748 (3); Art. I, Sec. II, Par. IX (e). We are aware of no legislative act which specifically waives the county's sovereign (governmental) immunity, under the circumstances of this case. Compare *Kordares*, supra at 848 (OCGA § 32-4-41 does not waive county's sovereign immunity). Thus, as to all causes of action averred against the county, and against the sheriff, his deputies, the road superintendents, and road employees for negligent acts or omissions in their *official* capacity there existed no waiver of governmental (sovereign) immunity. Compare *Riddle v. Ashe*, 269 Ga. 65 (495 SE2d 287) (Georgia Tort Claims Act gives state employees immunity from suit and tort liability for conduct performed within the scope of the employee's official duties) with *Woodard*, supra at 405 (1); *Gilbert*, supra, and *Crisp County*, supra.

(b) Having discussed the current state of the law regarding sovereign immunity, we will now address the issue of official immunity. Prior to the flooding, road superintendents and their employees were responsible to check the roads and make judgments regarding necessary repairs. This responsibility involved the exercise of personal deliberation and judgment regarding resource allocation. As in *Kordares*, supra at 851, there was no established procedure or instruction which the individual road supervisors and employees failed to follow during their inspections of the roadways, therefore, the acts relating to the manner of inspection and the action to be taken regarding the results obtained during the inspection, upon which any liability is premised, were discretionary. *Kordares*, supra at 851; see also *Hemak v. Houston &c. School Dist.*, 220 Ga. App. 110 (469 SE2d 679). Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty. See *Gregory v. Cardenaz*, 198 Ga. App. 697, 698 (402 SE2d 757) (1991). Decisions by road supervisors and employees, during the storm, as to *when* to repair or barricade various roads also were discretionary resource-allocation decisions made under emergency conditions. (Appellants' cited authority, including *Nelson v. Spalding County*, 249 Ga. 334 (290 SE2d 915) and *Joyce v. Van Arsdale*, 196 Ga. App. 95 (395 SE2d 275), is distinguishable from the facts of this case.) As to the performance of these discretionary acts by appellees/defendants, there exists no evidence of record that such acts were

performed either with malice or an intent to injure. See *Woodard*, supra at 406 (2). Accordingly, all appellees who were law enforcement (except for Deputy Rowe, regarding any negligent performance of a ministerial act done in his personal capacity — if properly averred in the complaint), road department supervisors, or road department employees would be shielded by the defense of *official* immunity from liability for any averred cause of action based on acts or omissions in their individual capacities. Id.

(c) Deputy Rowe did not barricade the road because, based on his inspection, he concluded that he could drive across the road. This decision clearly required the exercise of personal deliberation and judgment and constituted a discretionary act. The decision whether to barricade the road in response to the flooding road lay within the deputy's discretion. Compare *Woodard*, supra at 407 (2); see *Gregory*, supra at 698. Likewise, any decision made by road superintendent Tucker whether to barricade the road constituted a discretionary, as opposed to a ministerial act; moreover, there exists no evidence in the record that Mr. Tucker was aware of the actual conditions on the road in question before the accidents occurred.

(d) Adopting the definition of ministerial and discretionary acts, as announced in *Gregory*, supra, we also find that the averred negligent conduct of all the appellee employees, except for the requirement Deputy Sheriff Rowe had to report the condition of the flooded road, involved some form of discretionary act or function on their part. The decision by the *other* law enforcement officers and by road supervisors and employees as to which roads to barricade and close *first* constituted decisions as to the allocation of resources and, as such, involved discretionary acts or functions. See *City of Rome*, supra at 28 (1). Therefore both the defense of sovereign and official immunity apply to these appellees/defendants. Further, when the evidence and all inferences are construed in favor of the respondents to the motions, there exists no evidence of record that Deputy Horton was negligent in the performance of any ministerial duty.

However, appellants/plaintiffs also claim that Deputy Rowe negligently failed to report the dangerous road conditions to the dispatcher after coming upon the flooded roadway prior to the accidents. While Deputy Rowe testified that he did report the conditions on more than one occasion, the dispatcher testified that she did not recall such a report being received from Rowe. She also testified that there was no record of such calls in her log book, although the log may not be accurate due to the emergency conditions in the County that evening. Moreover, Rowe also admitted that he made the report to the dispatcher, as far as he could remember, but it had been a long time. In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the

court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843). The reasonable inference to be drawn from this testimony is that Deputy Rowe could not testify unequivocally that he made the calls. If a cause of action has been properly averred against Deputy Rowe for the negligent performance of a ministerial act in his individual capacity, a genuine issue for jury resolution would certainly exist as to whether Rowe, in fact, notified the dispatcher of the condition of the flooded road. If the jury concludes Rowe failed to report the flooding, it would be authorized to conclude that he had negligently failed to perform a ministerial as opposed to a discretionary duty. We find that, under the existing circumstances of this case, the duty of Deputy Rowe to report flooding conditions to the appropriate authorities in order for them to make decisions regarding manpower allocation under emergency conditions is a ministerial function. Further, there exists some evidence that the Sheriff's Department had a policy requiring deputies to report such conditions, and that Rowe was aware that the situation should be reported. " 'A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring the execution of a specific duty.' " *Joyce v. Van Arsdale*, supra at 96. In this case, Rowe in essence admitted that the policy and road conditions required that the situation be reported. Thus, if appellants/plaintiffs, in fact, adequately averred a cause of action against Deputy Rowe for the negligent performance of a ministerial act in his *individual* capacity, and a genuine material issue of fact existed as to such claim, Rowe would be protected by neither sovereign nor official immunity, and it would be error to grant him summary judgment as to such cause of action.

Examining the complaint filed against Rowe, we find that it provides sufficient notice pleading of claims of negligence against Rowe for acts done in the scope of his official employment; claims which are barred by the sovereign immunity defense. (Note: Under the narrow interpretation given to OCGA § 33-24-51 with regard to waiver of sovereign immunity, see, e.g., *Blumsack v. Bartow County*, 223 Ga. App. 392, 396 (1) (477 SE2d 642), any claim against Rowe in his *official capacity* that he had *failed* to report the flooded road's condition while acting in the scope of his official duties, would not give rise to waiver of sovereign immunity even assuming arguendo the County had purchased the requisite liability insurance. The failure to report would not arise from the use of a motor vehicle. Compare *Woodard*, supra at 405 (1).) Accordingly, the trial court did not err in granting summary judgment to Deputy Rowe as to any claims arising from acts or omissions occurring within his official capacity. A grant of

summary judgment must be affirmed if it is right for any reason. *Hanna v. McWilliams*, 213 Ga. App. 648, 651 (3) (446 SE2d 741) and cases cited therein.

A defendant often is deemed to be sued in his official capacity when the complaint avers negligent acts or omissions which were committed *within* the official scope of authority (scope of employment rule) of the defendant. Conversely, a defendant often is deemed to be sued in his individual capacity when the complaint avers negligent acts or omissions which were committed *outside* the scope of authority (scope of employment rule) of the defendant. If we were to apply these rules without modification, the complaint against Rowe would fail to state a cause of action against him in his individual capacity and, for reasons above-discussed, he would be entitled to assert the defense of sovereign immunity against any claims averred against him in his official capacity. However, we find that the Supreme Court in *Gilbert*, supra, has concluded that a defendant can be sued in his *individual* capacity for ministerial acts negligently performed *within* the scope of his authority (scope of employment rule). See generally *Gilbert*, supra at 752-753. Re-examining the complaint in light of this holding and the notice pleading requirements of the CPA, we find that the allegations concerning the deputy's negligent failure to perform the *ministerial* act of notifying the county of the water conditions on the road apply to claims against the deputy in both his official and individual capacity. These latter claims are not barred by the doctrine of sovereign immunity and are not protected by official immunity. Accordingly, the trial court did err in granting summary judgment to Rowe as to all claims. Rowe was not entitled to a grant of summary judgment as to the claim that, in his individual capacity, he had negligently failed to perform the ministerial act of notifying the county of the water conditions on the road.

(e) The sheriff and the road supervisors were exercising discretionary governmental functions, under the facts of this case, in the supervising of their subordinate appellees. See *Bontwell v. Dept. of Corrections*, 226 Ga. App. 524, 527 (2) (a) (486 SE2d 917); see also *Crisp County*, supra.

The road supervisors are not liable, in this case, under a respondeat superior theory of liability. See *Bob v. Hardy*, 222 Ga. App. 550, 553 (4) (474 SE2d 658). However, sheriffs frequently may be held liable for the negligence of their deputies under a respondeat superior theory; " 'since deputy sheriffs are employed by the sheriff rather than the county, sheriffs may be liable in their official capacity for a deputy's negligence in performing an official function.' " *Brown v. Jackson*, 221 Ga. App. 200, 201 (2) (470 SE2d 786). The sheriff and not the county is liable for the misconduct of his deputies. Id.; *Wayne County v. Herrin*, 210 Ga. App. 747, 751 (3) (437 SE2d 793). In this

case, the sheriff who was sued in his official capacity is immune from liability; he is insulated from liability by the defense of sovereign immunity, and that immunity has not been waived in this case. Compare *Woodard,* supra (unless sovereign immunity is waived that defense bars claims against the county, its commissioners, and its two employees in their official capacity). This case is distinguishable from *Gilbert,* supra.

(f) Appellants erroneously contend that the various appellees would not be protected by official immunity if their acts were done with reckless disregard for the consequences of their actions. However, "[t]he 1991 constitutional amendment provides no official immunity defense for ministerial acts negligently performed or for discretionary acts performed with actual malice or an intent to injure." *Crisp County,* supra at 802 (2). Acting with implied malice will not deny a defendant an official immunity defense. Id. The record is void of any evidence that the decisions and omissions of any appellees were performed either with actual malice or an intent to injure.

3. Appellants' final enumeration of error is without merit. None of the appellees listed in the enumeration could be held liable, under the facts of this case, for maintenance of a nuisance. A county is not liable for nuisance claims arising from personal injuries or wrongful death. *Kordares,* supra at 850 and cases cited therein. See additionally, Division 2, above.

The judgments granting appellees' motions for summary judgment are affirmed, except that the judgment granting summary judgment to Deputy Rowe as to claims that, in his individual capacity, he negligently failed to perform the ministerial act of notifying the county of the water conditions on the road is reversed. This case is remanded with the direction that the lower court proceed with this suit in a manner not inconsistent with this opinion. In view of the divergent views existing on this Court regarding the legal interpretation to be given the most recent pronouncements of the Supreme Court as to the scope of the sovereign immunity doctrine, we would welcome the grant of certiorari of this case.

*Judgments affirmed in part, reversed in part and case remanded with direction. Andrews, C. J., and Ruffin, J., concur. Blackburn, J., concurs specially. Pope, P. J., Johnson and Eldridge, JJ., concur in part and dissent in part.*

BLACKBURN, Judge, concurring specially.

I agree that summary judgment was properly granted to all defendants except Deputy Rowe. However, I write separately to clarify the distinction between sovereign and official immunity.

It is true that, "[w]hile suits against public employees in their

personal capacities involve official immunity, suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity." (Punctuation omitted.) *Gilbert v. Richardson*, 264 Ga. 744, 750 (4) (452 SE2d 476) (1994), quoting *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 56 (414 SE2d 638) (1992). However, the mere fact that a public employee is being sued for actions performed within the scope of his employment does not mean that he is being sued in his official capacity, and is therefore entitled to sovereign immunity.

The Supreme Court extensively addressed the nature of sovereign and official immunity in *Gilbert*. The court noted that the common-law doctrine of official immunity provided that "while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are willful, wanton, or outside the scope of his authority." *Gilbert*, supra at 752 (6).

The court then noted that the official immunity doctrine became part of the State constitution pursuant to a 1991 amendment, which provided as follows: "Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d).

In interpreting this section, the Supreme Court stated as follows: "According to the plain language of [the amendment], state officers and employees and those of its departments and agencies are subject to suit only when they negligently perform or fail to perform their 'ministerial functions' or when they act with actual malice or intent to cause injury in the performance of their 'official functions.' This court has not previously considered the effect of the amendment's reference to 'ministerial' or 'official' functions, in contrast to the previous 'ministerial act' versus 'discretionary act' dichotomy.

"*We interpret the term 'official functions' to mean any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts. Under this definition, the 1991 amendment provides no immunity for ministerial acts negligently performed* or for ministerial or discretionary acts performed

with malice or an intent to injure. It, however, does provide immunity for the negligent performance of discretionary acts, which is consistent with prior law." (Emphasis supplied.) *Gilbert*, supra at 752-753.

Thus, *Gilbert* makes it clear that a public employee may be sued for negligent performance of his ministerial acts, despite the fact that such acts constitute "official functions." Accordingly, the mere fact that an employee is sued for acts performed within the scope of his employment does not mean that he is sued in his official *capacity*.[1] To hold otherwise would virtually obliterate the need for a distinction between ministerial and discretionary acts, because a defendant would be able to claim that he is entitled to sovereign immunity regardless of the nature of his actions.

The complaint against Rowe alleged that he negligently failed to perform his ministerial function of notifying the county of the dangerous condition. As such, the suit is one against Rowe in his individual capacity, and he is not entitled to sovereign immunity. For summary judgment purposes, we accept as fact that Rowe failed to notify the dispatcher of the road conditions. This constitutes a failure to perform a ministerial act, and therefore he is not entitled to official immunity.

ELDRIDGE, Judge, dissenting in part.

Respectfully, I am compelled to dissent in part, because I feel that the grant of summary judgment to the Sheriff of Brooks County and Deputy Rowe should be reversed, because their acts were ministerial in nature and they were not protected by sovereign immunity or official immunity since they were not employees of the county.

Art. I, Sec. II, Par. IX of the 1983 Const. of Ga. was amended by Ga. L. 1990, p. 2435, § 1, which became after ratification the 1991 amendment. The 1991 amendment reads in part: "Except as specifically provided by the General Assembly in a State Tort Claims Act, *all officers and employees of the state* or its departments and agencies *may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions* and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. *Except as provided in this subparagraph, officers and employees of the state or its*

---

[1] I note that the Georgia Tort Claims Act, enacted under the authority of the 1991 amendment, provides *state* employees with broad immunity for actions performed within the scope of their official duties, regardless of whether such actions are discretionary or ministerial. OCGA § 50-21-21 (a); see also *Riddle v. Ashe*, 269 Ga. 65 (495 SE2d 287) (1998). However, this statutory immunity is not applicable to county employees and has no application in this case. See OCGA § 50-21-22 (5).

*departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.*" (Emphasis supplied.) *Gilbert v. Richardson*, 264 Ga. 744, 746-747 (2) (452 SE2d 476) (1994) held that the 1991 amendment applied to counties, as well as to the State. See also *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581) (1995). Thus, the 1991 amendment and *Gilbert v. Richardson*, supra at 752-754, make county employees or the sheriff liable for the negligent performance of ministerial duties in their official capacities.

However, the sheriff is not an *employee* of a county, because his or her duties are separate and independent from the county as a governmental entity. The sheriff is not an entity of the State, either as an agency or department. *Thomas v. Hosp. Auth. of Clarke County*, 264 Ga. 40 (440 SE2d 195) (1994). The sheriff is a county officer; however, the sheriff is independent of and not answerable to the governing authorities of the county. See 1983 Ga. Const., Art. IX, Sec. I, Par. III. The duties and function of the office of sheriff are defined by statute or common law. OCGA § 15-16-1 et seq. "The office of sheriff carries with it all of its common-law duties and powers, except as modified by statute." (Citations and punctuation omitted.) *Warren v. Walton*, 231 Ga. 495-500 (202 SE2d 405) (1973); see also *Wayne County v. Herrin*, 210 Ga. App. 747, 753 (3) (437 SE2d 793) (1993). The sheriff and deputies have been held liable on a bond for the faithful performance of their duties since statehood. OCGA §§ 15-6-5; 15-6-6; 15-16-23.

In dicta, *Gilbert v. Richardson*, supra at 754, recognized that the sheriff *individually* lacked sovereign immunity in his own name because he is not a subdivision of the state or an agency: "In conclusion, [the sheriff] may not claim the benefit of [the deputy's] official immunity defense. Because he is being sued in his official capacity, he is entitled to the benefit of [the county's] sovereign immunity defense. Since, however, the county has waived sovereign immunity to the extent of its liability insurance coverage, [the sheriff's] sovereign immunity defense is likewise waived to that extent." Thus, a sheriff in his official capacity has no sovereign immunity of his own and can be held liable under the doctrine of respondeat superior for employees' acts or omissions in their official capacity, except where protected by his own official immunity. See *Gilbert v. Richardson*, supra at 752-754; *Lowe v. Jones County*, 231 Ga. App. 372 (499 SE2d 348) (1998); *Seay v. Cleveland*, 228 Ga. App. 836 (493 SE2d 30) (1997); *Brown v. Jackson*, 221 Ga. App. 200, 201 (2) (470 SE2d 786) (1996).

*Gilbert v. Richardson*, supra at 746-747 held that sovereign immunity applies to counties as well as county employees. However,

the Sheriff of Brooks County and his employees are not Brooks County employees but are the employees of the sheriff. "Since deputy sheriffs are employed by the sheriff rather than the county, sheriffs may be liable in their official capacity for a deputy's negligence in performing an official function." Id. at 754. "Deputy sheriffs and deputy jailors are employees of the sheriff, whom the sheriffs alone are entitled to appoint or discharge. (Cit.) They have no duties save alone duties of the sheriff, which as his deputy and his agent they are by law authorized to perform. The sheriff, and not the county, is liable for the misconduct of his deputies. . . . Therefore, the [Brooks] County Sheriff, and not [Brooks] County, would have been the proper party to have sued under a theory of respondeat superior." (Citations and punctuation omitted.) *Brown v. Jackson*, supra at 201; see also *Lowe v. Jones County*, supra; *Wayne County v. Herrin*, supra at 751. Since the Sheriff of Brooks County is being sued in a respondeat superior capacity, then he does not have the sovereign immunity of Brooks County. *Gilbert v. Richardson*, supra at 754; see also *Brown v. Jackson*, supra; *Wayne County v. Herrin*, supra.

Such acts of alleged negligence by Deputy Rowe, dealing with natural occurrences, fall within ministerial duties, not requiring the exercise of discretion to: (1) furnish immediate notice to the appropriate county agency that can take action; (2) warn the public using that road of the danger by any available means; and (3) temporarily close the road as impassible. Any county employee should have been able to perform such task for the general safety of the public and should have done so under the circumstances without orders from a superior as a ministerial function. This is a case wherein the deputy was on the site of the hazard and failed to do anything to either warn the public or to notify other governmental agencies so that they could act. Such ministerial failure led to successive and repeated car wrecks at the same location of the washed-out roadway, resulting in the wreck of two cars and two trucks with one death. Here, there was a gross dereliction of duty to protect the general public from danger.

The acts and omissions of the sheriff and his deputy were not discretionary acts; I believe that such acts were ministerial or that there existed a jury question as to whether or not the acts were ministerial. "The doctrine of official immunity, developed primarily in Georgia through case law, provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority. [Cits.] . . . We interpret the term 'official functions' to mean any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts. Under this definition, the 1991 amendment [Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d)] provides

no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure. It, however, does provide immunity for the negligent performance of discretionary acts, which is consistent with prior law. . . . Thus, . . . private employers could be liable for the negligent acts of their employees, despite the employees' immunity from liability. [Cits.] Following this rule, we hold that the official immunity of a public employee does not protect a governmental entity from liability under the doctrine of respondeat superior. A county may be liable for a county employee's negligence in performing an official function to the extent the county has waived sovereign immunity. [Cits.]" *Gilbert v. Richardson*, supra at 752-754.

"Whether the acts upon which liability is predicated are ministerial or discretionary is determined by the facts of the particular case. *Nelson v. Spalding County*, 249 Ga. 334, 336 (2) (a) (290 SE2d 915) (1982)." *Woodard v. Laurens County*, 265 Ga. 404, 407 (2) (456 SE2d 581) (1995). Thus, the sheriff is liable under the doctrine of respondeat superior for the acts and omissions of his deputies, even if they, themselves, are immune from liability for discretionary acts. *Gilbert v. Richardson*, supra at 754; *Brown v. Jackson*, supra at 201; *Wayne County v. Herrin*, supra at 751.

"A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." (Citation and punctuation omitted.) *Joyce v. Van Arsdale*, 196 Ga. App. 95, 96 (395 SE2d 275) (1990); accord *Gregory v. Cardenaz*, 198 Ga. App. 697, 698 (402 SE2d 757) (1991). There is no evidence that the sheriff or deputies were "invested with a degree of discretion in determining how to respond to [the hazard]." *Gregory v. Cardenaz*, supra at 698.

The methods of posting a warning or closing a public road are ministerial functions. *Joyce v. Van Arsdale*, supra at 97; see also *Nelson v. Spalding County*, 249 Ga. 334, 336 (2) (a) (290 SE2d 915) (1982); *Mathis v. Nelson*, 79 Ga. App. 639, 642 (54 SE2d 710) (1949). Thus, in temporarily closing the road, putting out warnings on the road of the hazard, or notifying the appropriate county agency, the deputy would be performing a ministerial function as a public servant.

*Riddle v. Ashe*, 269 Ga. 65 (495 SE2d 287) (1998) deals with a state employee and not a county employee within the ambit of OCGA § 50-21-25 (a), the Georgia Tort Claims Act. OCGA § 50-21-22 (5) expressly excludes counties from the ambit of the act. *Gilbert v. Richardson*, supra at 747. Thus, *Riddle v. Ashe*, supra, in no way defines

the scope of the county employee's official duties when OCGA § 50-21-20 et seq. is construed as to state employees. See *Gilbert v. Richardson*, supra; *Woodard v. Laurens County*, supra. Instead, *Gilbert v. Richardson*, supra, has held that official immunity does not arise when ministerial acts are done within the scope of the county employee's official duties; otherwise, the acts would be personal and not ministerial. "We interpret the term 'official functions' to mean any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts. Under this definition, the 1991 amendment provides no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure." *Gilbert v. Richardson*, supra at 753. There is no way in which *Riddle v. Ashe*, supra, leaves such language for further construction as contended by the majority.

I am authorized to state that Presiding Judge Pope and Judge Johnson join in this opinion.

DECIDED MARCH 20, 1998 —
RECONSIDERATION DENIED APRIL 2, 1998

*Evans & Evans, Larry K. Evans, Samuel F. Greneker, Barry R. Chapman*, for appellants.

*Long & Denton, Allen D. Denton, Chambless, Higdon & Carson, Thomas F. Richardson, Jon C. Wolfe, Freeman, Mathis & Gary, Theodore Freeman, Hollberg, Weaver & Kytle, George M. Weaver*, for appellees.