S98G1226. ROWE v. COFFEY et al.
(515 SE2d 375)

BENHAM, Chief Justice.

In early March 1994, Deputy Sheriff Rowe inspected Studstill Road during a torrential rainstorm in Brooks County, and decided a barricade was not necessary. However, a subsequent washout on that road that morning resulted in a series of wrecks and one death. Suit was brought against a number of defendants, including Brooks County, the sheriff, various road supervisors, and several deputy sheriffs. The trial court granted summary judgment to the defendants. The Court of Appeals affirmed the grant of summary judgment to all the defendants except Rowe. *Coffey v. Brooks County,* 231 Ga. App. 886 (1) (500 SE2d 341) (1998). As to Rowe, the Court of Appeals held that he was not protected by the public duty doctrine enunciated in *City of Rome v. Jordan,* 263 Ga. 26 (2) (426 SE2d 861) (1993). This Court granted the writ of certiorari and posed the question, "Whether the public duty doctrine applies in this case."

The Court of Appeals discussed in its opinion in this case the proper scope of the phrase "police protection" as used in *City of Rome,* supra, and concluded that it was "broader in scope than the mere providing of protection to the public against third-party criminal activity and includes the provision of certain other protective police services." *Coffey v. Brooks County,* supra at 887. That court went on to find that Rowe and the other law enforcement defendants in this case "were engaged in police protection of the public when they inspected and elected whether to blockade public roads within the county which were in various stages of flooding." Id. However, reading this Court's decisions in *Dept. of Transp. v. Brown,* 267 Ga. 6 (3) (471 SE2d 849) (1996), and *Hamilton v. Cannon,* 267 Ga. 655 (1) (482 SE2d 370) (1997), as limiting the public duty doctrine to "police protection situations involving the acts or omissions of third parties whose behavior may be unpredictable," *Coffey v. Brooks County,* supra at 888, the Court of Appeals declined "to extend the public duty doctrine to provide immunity from liability to the law enforcement officers engaged in the protection of the public at large from hazardous conditions caused by the weather rather than by a third party." Id.

Looking back at the language used in *Dept. of Transp. v. Brown,* supra, we see that language used in distinguishing the situation in that case from the situation in *City of Rome* could fairly be inter-

preted as the Court of Appeals did in this case. The offending language is these sentences:

> The essential difference between that duty and the duty at issue in this case is the involvement of third parties whose behavior may be unpredictable. The duty DOT owes to each member of the public does not involve third parties, only the way in which DOT's performance or nonperformance of its duty impacts individuals.

*Dept. of Transp. v. Brown*, supra at 8. In hindsight, we conclude that a better expression of the distinction between those cases would simply have been that *City of Rome* involved police protection and *Dept. of Transp. v. Brown* did not and that the public duty doctrine, which deals with the failure to provide police protection, did not apply to the Department of Transportation's alleged negligence.

The holding in *Hamilton v. Cannon*, supra, that the "public duty doctrine adopted in *City of Rome* is limited to the situation in that case and thus does not apply outside the police protection context," should be read only to limit the application of the doctrine to situations involving police protection in general. While the plaintiffs in *City of Rome* alleged a failure to protect from the acts of a third party, the opinion states the public duty doctrine in a broader way, concentrating on the question of whether a governmental unit's duty ran to the public at large or to an individual. *City of Rome* may be fairly read to limit the scope of the doctrine to the police protection context, but neither *City of Rome*, nor *Dept. of Transp. v. Brown*, nor *Hamilton v. Cannon* expressly limits the application of the doctrine to protection from the acts of third parties.

Accordingly, we hold that *Dept. of Transp. v. Brown* and *Hamilton v. Cannon* do not so limit the application of the public duty doctrine. The scope of "police protection" is broad enough to include, as the Court of Appeals reasoned in this case, other protective police services. While we do not undertake in this case to set out the exact limits of those services, we take note of the persuasive foreign authority cited by the Court of Appeals in its opinion in this case, applying the public duty doctrine in the context of "hazardous conditions caused by nature" (*Coffey v. Brooks County*, supra at 887), and conclude that the scope of police protection for the purposes of the public duty doctrine includes the activities undertaken by Rowe in this case. That being so, Rowe was entitled to summary judgment. The judgment of the Court of Appeals in this case must, therefore, be reversed to the extent that it reversed the trial court's grant of summary judgment to Rowe.

*Judgment reversed. All the Justices concur, except Fletcher, P. J.,*

*and Sears, J., who concur specially, and Hunstein, Carley, and Thompson, JJ., who dissent.*

SEARS, Justice, concurring specially.

In *City of Rome v. Jordan*, 263 Ga. 26 (426 SE2d 861) (1993), this Court adopted the majority view on the duty owed by governmental units to provide police protection to individual citizens:

> [L]iability does not attach where the duty owed by the governmental unit runs to the public in general and not to any particular member of the public, except where there is a special relationship between the governmental unit and the individual giving rise to a particular duty owed to that individual.

Id. at 27, quoting 38 ALR4th 1194, § 1[a] (1985). To establish the scope of the "special relationship" required to establish a particularized duty to protect, we adopted in *City of Rome* three requirements:

> (1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party; (2) knowledge on the part of the municipality that inaction could lead to harm; and, (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking.

Id. at 29. Applying the doctrine in that case, we held that the City of Rome owed no duty to the plaintiff on which tort liability could be based because there was no special relationship between the City of Rome and the plaintiff giving rise to a particular duty owed to that individual. Subsequently, in *Dept. of Transp. v. Brown*, 267 Ga. 6 (471 SE2d 849) (1996), we held that the public duty doctrine did not apply to the Department of Transportation in a suit based on negligent design of an intersection because "our decision in [*City of Rome v. Jordan*] was directed squarely and only at the duty owed by a governmental entity to provide police protection to individual citizens." 267 Ga. at 8. One year later, in response to questions certified by the United States Court of Appeals for the Eleventh Circuit, we relied on our holding in *Dept. of Transp. v. Brown*, supra, to conclude that the public duty doctrine did not apply to a situation in which a deputy sheriff answering an emergency summons to a swimming pool where a patron had collapsed interfered with ongoing efforts at resuscitation. *Hamilton v. Cannon*, 267 Ga. 655 (482 SE2d 370) (1997). Specifically, we held that the decision in *City of Rome* applied only to police protection and was limited to the situation involved in that case.

The Court of Appeals has had several opportunities since we

issued *City of Rome* to consider and apply the public duty doctrine. See *Dybas v. Town of Chester*, 234 Ga. App. 113 (1) (505 SE2d 274) (1998) (absent special relationship, no liability for failure to keep underage drivers off road); *Diaz v. Gwinnett County*, 225 Ga. App. 807, 808 (485 SE2d 42) (1997) (absent special relationship, public safety officials not liable to employee for failure to prevent hepatitis infection); *Booth v. Firemen's Ins. Co.*, 223 Ga. App. 243 (2) (477 SE2d 376) (1996) (absent special relationship, no liability for conduct allegedly breaching deputy's bond); *Washington v. Jefferson County*, 221 Ga. App. 81, 82 (470 SE2d 714) (1996) (absent special relationship, no liability for not preventing fight); *Finley v. Lehman*, 218 Ga. App. 789 (1) (463 SE2d 709) (1995) (absent special relationship, no liability for allegedly negligent inspection of ditch); *Tilley v. City of Hapeville*, 218 Ga. App. 39 (1) (459 SE2d 567) (1995) (absent special relationship, no liability for not preventing collision with car stopped in roadway); *Landis v. Rockdale County*, 212 Ga. App. 700 (445 SE2d 264) (1994) (absent special relationship with person subsequently injured by intoxicated driver, no liability for not arresting intoxicated driver in earlier encounter); *City of Lawrenceville v. Macko*, 211 Ga. App. 312 (2) (439 SE2d 95) (1993) (absent special relationship, no liability for allegedly negligent inspection of house under construction); *Smail v. Douglas County*, 210 Ga. App. 830, 831 (437 SE2d 824) (1993) (absent special relationship, no liability for failure to provide police protection to woman killed by rock thrown from overpass); and *Feise v. Cherokee County*, 209 Ga. App. 733 (434 SE2d 551) (1993) (absent special relationship, no liability for failing to prevent attack by stalker). In addition to the present case, the Court of Appeals has found the doctrine to be inapplicable in *Dollar v. Dalton Public Schools*, 233 Ga. App. 827 (1) (c) (505 SE2d 789) (1998) (child injured falling from playground equipment at school); *Queen v. City of Douglasville*, 232 Ga. App. 68 (2) (500 SE2d 918) (1998) (negligence in planning parade alleged to cause child to be hit by train); *Vance v. T. R. C.*, 229 Ga. App. 608 (1) (a) (494 SE2d 714) (1997) (physician's failure to report child abuse); and *Dept. of Transp. v. Brown*, 218 Ga. App. 178 (3) (460 SE2d 812) (1995) (doctrine not applicable "where the legislature, by statute, creates exposure of the state to potential liability for losses, as it did in OCGA § 50-21-24 (10)").

As correctly noted by the majority, opinions issued since this Court's decision in *City of Rome* demonstrate that our pronouncements regarding the doctrine have engendered uncertainty in its application. See, e.g., *Coffey v. Brooks County*, 231 Ga. App. 886 (500 SE2d 341) (1998). I believe, therefore, that this appeal presents a ripe opportunity to clarify the doctrine's applicability and scope.

First, it must be noted that the doctrine operates only when there is an alleged failure to comply with a duty to protect. *City of*

*Rome*, supra, fn. 2. More specifically, we have limited the application of the doctrine to the public safety context, referring in *City of Rome* and *Hamilton* to "police protection," and in *Dept. of Transp. v. Brown* to "police services." With the benefit of the cases considering application of the doctrine, it becomes clear that Presiding Justice Fletcher best expressed the scope of the doctrine in his dissent in *Hamilton*:

> the public duty doctrine applies to police and other public employees who provide police services. These services include preserving public order; promoting public health, safety, and morals; and preventing, detecting and punishing crime.

Id. at 659.

Noting that the situation did not exist in *City of Rome*, we declined in that case to "determine whether a special duty may exist even in the absence of a special relationship where a police officer is present at the scene of a crime, has the knowledge and the resources to act to the benefit of the injured party, yet does not act." Id. at 29, n. 4. After considering the doctrine's development in this State, I believe that the doctrine should be expanded to include a provision for a particularized duty to an individual to arise separately from the formation of a "special relationship" as contemplated in *City of Rome*. I would hold, therefore, that a particularized duty on which liability may be based can arise when one with a duty to provide police services is present at the scene of a crime or emergency, has knowledge of the danger and resources to aid an injured or imperilled party, yet fails to act.

With those considerations in mind, I would restate the public duty doctrine as follows: Liability of a governmental unit and its agents for failure to provide police services to an individual does not attach where the duty owed by the governmental unit runs to the public in general and not to any particular member of the public, but liability does attach when (a) one with a duty to provide police services is present at the scene of a crime or emergency with knowledge of the danger and resources to aid an injured or imperilled party, yet fails to act; or (b) a special relationship between the governmental unit and the individual giving rise to a particular duty owed to that individual is created by (1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party; (2) knowledge on the part of the municipality that inaction could lead to harm; and, (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking. For the purposes of the public duty doctrine, "police services" should include preserving public order; promoting public health, safety, and morals; and preventing, detecting and punishing crime.

Applying this restated doctrine to the relevant case law discussed above only raises concerns about one of our earlier decisions. This Court's decision in *City of Rome* would have been the same under the restated doctrine because the case involved a claim of liability for failure to provide police services to an individual without a special relationship between the individual and the governmental unit. Likewise, the result would have been the same in *Dept. of Transp. v. Brown*, because that case did not involve a claim of liability for failure to provide police services, but rather a claim of liability based on faulty design of an intersection, an activity clearly not involving police services. However, under the public duty doctrine as restated in this concurrence, the answer to the first certified question in *Hamilton* would have been different. The Eleventh Circuit asked, "(1) Does the 'public duty doctrine' established in *City of Rome* apply outside the police protection context and in the circumstances of this case?" Under the restated doctrine, the actions of the deputy in that case were clearly within the meaning of "police services," and a particularized duty to the imperilled individual would arise when the deputy arrived at the scene with knowledge of the danger and resources to aid the individual.

Regarding application of the doctrine by the Court of Appeals, the result of the cases cited above, other than the present case, would be the same under the restatement of the doctrine. In its opinion in the present case, the Court of Appeals specifically noted that it was this Court's decisions in *Hamilton* and *Dept. of Transp. v. Brown* which prevented it from applying the doctrine to Rowe.

Viewing our precedent by looking at its effect on the decisions of the Court of Appeals, as noted by the majority, it is apparent that the means used to distinguish *Dept. of Transp. v. Brown* from *City of Rome* were inappropriate. I agree with the majority that *Dept. of Transp. v. Brown* could better have been distinguished simply by holding that highway design does not come within the meaning of police services, and I believe that decision should be allowed to stand. However, I also believe that the holding in *Hamilton* that the doctrine did not apply would be incorrect under the doctrine as restated in this concurrence. The situation in *Hamilton* would be within the public duty doctrine as restated herein because it involved a law enforcement officer providing police services and arriving at the scene of an emergency with knowledge of the danger and resources to aid the individual, and I believe that *Hamilton* should be overruled to the extent it is inconsistent with the restatement of the public duty doctrine in this opinion.

I am authorized to state that Presiding Justice Fletcher joins in this special concurrence.

HUNSTEIN, Justice, dissenting.

In *City of Rome v. Jordan*, 263 Ga. 26 (426 SE2d 861) (1993), a majority of this Court decided to engraft onto Georgia law the "public duty doctrine," whereby a municipality in the exercise of its police powers could be held liable for its failure to protect individuals from the criminal acts of third parties where a "special relationship" existed between the city and the crime victim. Application of the public duty doctrine was limited to police nonfeasance in regard to third-party criminal acts in the unanimous opinion rendered in *Dept. of Transp. v. Brown*, 267 Ga. 6 (471 SE2d 849) (1996), which this Court subsequently followed in *Hamilton v. Cannon*, 267 Ga. 655 (482 SE2d 370) (1997). The language in *Brown* is not subject to misunderstanding nor is *Hamilton* subject to the limitation the majority now imposes on it. The majority is disapproving *Brown* and overruling *Hamilton*, an opinion rendered less than two years ago in which this Court rejected the very position now adopted without explanation by the majority here.

The consequences of any judicial expansion of the public duty doctrine were thoroughly thrashed out in *Hamilton*, which came to this Court by certified questions from the Eleventh Circuit Court of Appeals. The majority's simplified treatment of this complex area of the law ignores the "significant public policy ramifications" presented by any expansion of the public duty doctrine, ramifications which *Hamilton* and the Eleventh Circuit recognized. *Hamilton v. Cannon*, 80 F3d 1525, 1534 (11th Cir. 1996). The majority cannot even resolve the straightforward issue of what constitutes "protective police services" and fails utterly to address issues such as whether the public duty doctrine applies to acts of misfeasance as well as nonfeasance; how the doctrine can be reconciled with the pervasive legislative and constitutional provisions regarding the liability of public employees; and whether the original purpose of the doctrine remains viable so that the doctrine can be used to pierce immunity defenses, not merely to provide a judicially-created shield from liability.

Although the distinction between misfeasance and nonfeasance was so important in *Hamilton* that the Eleventh Circuit certified a separate question about it, id., 267 Ga. at 655, the majority renders an opinion controlling this important issue by holding — without any discussion whatsoever — that the public duty doctrine applies to a case involving an allegation of misfeasance.[1] Likewise, the majority does not attempt to resolve the conflicts between the public duty doctrine and either the Georgia Constitution, Art. I, Sec. II, Par. IX, see

---

[1] The only allegation which remains against the deputy is whether he was negligent in the manner in which he reported the emergency situation to the dispatcher. *Coffey v. Brooks County*, 231 Ga. App. 886 (2) (500 SE2d 341) (1998).

also OCGA § 50-21-20 et seq. (Georgia Tort Claims Act), or the many statutes enacted by the Legislature which address the liability of public employees performing police protection activities during the course of emergency situations. E.g., OCGA § 35-1-7 (law enforcement officers); OCGA § 51-1-30 (b) (firefighters); OCGA § 31-11-8 (a) (ambulance service personnel). Prior to the majority's holding in this case, a deputy sheriff who rendered aid to an injured person at an automobile accident scene was immune from liability for both malfeasance and nonfeasance except where gross negligence was involved. OCGA § 35-1-7. Under the public duty doctrine, however, the deputy may now be held liable for acts of misfeasance and nonfeasance whenever the plaintiff establishes that a "special relationship" existed between the parties. Such a relationship arises where (1) a municipality makes explicit assurances, through promises or actions, that it would act on behalf of an injured party; (2) the municipality knows that inaction on its part could lead to harm; and (3) the injured party justifiably and detrimentally relies on the municipality's affirmative undertaking. *City of Rome*, supra. Thus, in the context of an automobile accident, the arrival of the deputy sheriff at the emergency scene would fulfill the first requirement; the presence there of an individual known by the deputy to need assistance in order to avoid injury would fulfill the second; and any act of simple negligence committed by the deputy on which the injured person relies will satisfy the third requirement.

I cannot agree with the majority's cavalier refusal to address the "significant public policy ramifications" of its holding, ramifications which this Court considered in *Hamilton* before rejecting the expansion of the public duty doctrine proposed by the dissent therein. The *Hamilton* Court refused to apply the public duty doctrine to the many acts of misfeasance plaintiffs alleged were committed by the deputy sheriff who helped plaintiffs' decedent, by the retired sexagenarian who was the on-site manager of the pool where the decedent collapsed, and by the pool's uncertified lifeguard. The *Hamilton* Court refused to abrogate OCGA § 35-1-7, the expression of the Legislature's will that deputy sheriffs at an emergency scene are liable solely for gross negligence, whether or not the judicially-created "special relationship" exception exists. The *Hamilton* Court upheld the plain and unambiguous language in *Dept. of Transp. v. Brown* without contorting it or interpreting it to mean the exact opposite.

Two years later, neither the dire consequences of extending this judicially-created immunity beyond its carefully-delineated borders nor the force of stare decisis raises any concern in the majority. Because the majority presents no persuasive reason for overruling *Hamilton* and no justification for expanding the public duty doctrine to acts of misfeasance committed by public employees who are not

operating to protect individuals from the criminal acts of third parties, I must dissent.

I am authorized to state that Justice Thompson joins in this dissent.

CARLEY, Justice, dissenting.

Because I would affirm the Court of Appeals' decision insofar as it finds the public duty doctrine to be inapplicable to the facts of this case, I dissent. However, I cannot join Justice Hunstein's dissent and write separately to explain my view regarding the exact nature of the drastic change which *City of Rome v. Jordan*, 263 Ga. 26 (426 SE2d 861) (1993) effected in Georgia law. Although Justice Hunstein's special concurrence in *City of Rome* expressed the opinion that the Court had created an across-the-board exception to governmental immunity, I do not think that the majority in *City of Rome* actually intended such a change. In *City of Rome*, supra at 27, this Court's quotation from 38 ALR4th 1194, § 1[a] indicates that the public duty doctrine is normally defined as a *limitation* on the liability of governmental units or officers, and not as a means of piercing an immunity defense. See also 18 McQuillen, Municipal Corporations, § 53.04.25 (3d ed. rev. 1993); Prosser and Keeton on Torts, § 131, p. 1049 (5th ed. 1984); 5 Harper, James and Gray, The Law of Torts, § 29.6A, pp. 640-641 (2d ed. 1986). The question of duty and the inroads on that tort element by the public duty doctrine precede and are separate and distinct from the issue of the defense of immunity. *City of Rome v. Jordan*, supra at 27 (1), fn. 1. The incorporation of the public duty doctrine into Georgia's tort jurisprudence has resulted in a limitation on liability which is *in addition to* that provided by constitutional governmental immunity. For that reason alone, it is a radical departure from previous Georgia law and ought to be severely restricted, if retained at all. See *Hudson v. Town of East Montpelier*, 638 A2d 561, 566-568 (I) (B) (Vt. 1993); *Leake v. Cain*, 720 P2d 152, 158-160 (II) (A) (2) (Colo. 1986); Harper, James and Gray, supra; 18 McQuillen, supra at § 53.04.25, p. 167. Indeed, I agree with the following rationale of *Hudson v. Town of East Montpelier*, supra:

> [T]his doctrine . . . in recent years has been rejected or abolished by most courts considering it. [Cits.] Courts have rejected or abolished the doctrine because[, as shown by this Court's cases,] it is confusing and leads to inequitable, unpredictable, and irreconcilable results. [Cits.] These courts have stressed that concerns over excessive government or public employee liability are baseless considering the limitations on liability afforded by conventional tort principles, various types of official immunity or exceptions

to waivers of sovereign immunity. [Cits.] . . . We decline to adopt the confusing and inconsistent public duty doctrine as a means of limiting the liability of government employees who are already protected to some extent by the doctrine of qualified official immunity. . . .

*Hudson v. Town of East Montpelier,* supra at 566, 568 (I) (B).

DECIDED MARCH 19, 1999.

*Chambless, Higdon & Carson, Thomas F. Richardson,* for appellant.

*Evans & Evans, Larry K. Evans, Samuel F. Greneker, Barry R. Chapman, Long & Denton, Allen D. Denton, Freeman, Mathis & Gary, Theodore Freeman, Hollberg, Weaver & Kytle, George M. Weaver,* for appellees.