### 35840. SOUTHEASTERN NEWSPAPERS CORPORATION t/a SAVANNAH NEWS-PRESS v. GRIFFIN et al.

JORDAN, Presiding Justice.

The Savannah News-Press served as the official organ of Chatham County. On November 29, 1978, the Sheriff and Probate Judge of Chatham County designated the Georgia Gazette and Journal-Record (hereinafter the Georgia Gazette) as the county's official organ pursuant to Code Ann. § 39-1103.

The Savannah News-Press petitioned for a writ of mandamus to direct the sheriff, probate judge and clerk to rescind that order and sought an injunction against the Georgia Gazette to prohibit it from holding itself out as the county's official organ. After a hearing, the trial court held against the Savannah News-Press on all counts, and this appeal followed.

Central to this appeal is the language of Code Ann. § 39-1103, which provides in part as follows: "No journal or newspaper published in this State shall be declared or made the official organ of any county . . . unless such newspaper shall have been continuously published and mailed to a list of bona fide subscribers for a period of two years, or is the direct successor of such journal or newspaper, and unless 85 per cent. of the circulation of such newspaper or journal is paid circulation . . ."

The Savannah News-Press contends that the Georgia Gazette is unqualified under this statute because its predecessor, the Savannah Journal-Record with whom it merged, was predominantly a give-away with a list of only 68 paid subscribers and since it could not have qualified to be the official organ, its successor, the Georgia Gazette, should not be allowed to be designated simply by virtue of their merger. In addition, the Savannah News-Press argues that the Georgia Gazette did not meet the 85% paid circulation requirement on its date of

designation, and that since it was not mechanically printed in Chatham County, it could not be deemed to be "published" within the county as is required by Code Ann. § 39-1101. For these reasons, the Savannah News-Press urges that the trial court erred in finding the Georgia Gazette qualified to be designated as the official organ.

1. The Savannah News-Press attempted to prove at the hearing that the Georgia Gazette did not have an 85% paid circulation rate through the use of the Georgia Gazette's own figures. Based on these same figures, the Georgia Gazette submitted an audit report which indicated that it had well over an 85% paid circulation rate. The difference between the two positions is due to the different characterizations of the term "paid circulation." The Savannah News-Press contends that the usage of "paid circulation" in Code Ann. § 39-1103 means subscriptions that have actually been paid for. The Georgia Gazette equates "paid circulation" with subscriptions actually paid for as well as accounts receivable. At the hearing, the Georgia Gazette attempted to prove that this was the accepted trade definition by introducing the Audit Bureau of Circulations (ABC) rules pertinent to determining paid circulation.

"The ABC is a private non-profit organization which periodically audits and certifies the circulation of magazines [and newspapers]." Perlman v. Time, Inc., 64 Ill. App. 3d 190 (380 NE2d 1040) (1978). Article B 8.3 of the ABC bylaws provides as follows: "When a dealer's account is over three months in arrears such portion of the draw which is in arrears over three months shall not be considered as measuring up to the Bureau's definition of paid circulation . . ."

The ABC rules simply provide a method of accounting similar to the accrual method that a newspaper may elect to use. The above-quoted provision of the bylaws does not represent some entirely new accounting method foreign to all accepted accounting principles. A newspaper not subscribing to ABC's services may use a cash method of accounting to determine its paid circulation. Both methods are acceptable, but neither method is mandated by Code Ann. § 39-1103.

Furthermore, introduction of the ABC rules into evidence could not have been error for the reason that an audit of the records of the Georgia Gazette by an accounting firm introduced at the hearing revealed that the paid circulation of the Georgia Gazette on the date of its designation was 96.35%. According to the testimony of the CPA who conducted the audit, the audit was performed according to "generally accepted accounting standards." The accountant testified that sometime after the beginning of the audit, he became aware of the ABC rules and was "pleasantly surprised" that the rules "went along the same order" as those he was already following in the audit. Therefore, the figure of 96.35% arrived at in the audit was not necessarily the result of reference to the ABC rules such that it would be necessary for this court to conclude that absent the alleged "leniency" of the ABC rules, the Georgia Gazette could not have qualified to become the official organ.

2. As to the Savannah News-Press' argument that the Georgia Gazette would have to be mechanically printed in the county to be "published" in the county, we disagree.

The case of *McGinty v. Chambers,* 182 Ga. 341 (185 SE 513) (1936), as explained by *Dooly v. Gates,* 194 Ga. 787 (22 SE2d 730) (1942), put to rest any judicially imposed requirement on Code Ann. § 39-1101 that a newspaper must be mechanically printed in the county it serves as official organ. See *Carter v. Land,* 174 Ga. 811 (164 SE 205) (1932), for the former rule. Moreover, *Dooly v. Gates,* supra, specifically dealt with a contest between two qualified newspapers, though one was mechanically printed outside the county at the time of its selection, thus silencing the Savannah News-Press' argument that a newspaper may be deemed qualified when it is mechanically printed elsewhere only when it is competing against an unqualified competitor.

3. Finally, the Savannah News-Press argues that the predecessor of the Georgia Gazette, the Savannah Journal-Record, with which it merged to become qualified under the provisions of Code Ann. § 39-1103 to be designated as the official organ, should have met the statutory qualifications itself. The plain language of the

statute, coupled with the facts of this case, belies that argument, however.

Code Ann. § 39-1103 requires the designated official organ to be "continuously published and mailed to a list of bona fide subscribers for a period of two years, or [be] the direct successor of such journal or newspaper . . ." The requirement that the selected newspaper have an 85% paid circulation rate applies to the newspaper actually chosen and not the predecessor which must have only been continuously published and mailed to a list of subscribers for two years. See *Williams v. Athens Newspapers, Inc.*, 241 Ga. 274 (1) (244 SE2d 822) (1978). Since there was not a dispute at the hearing as to whether or not the Georgia Gazette was the successor to the Savannah Journal-Record as a matter of fact, and since there was no dispute that the Savannah Journal-Record met the requirements demanded of a predecessor newspaper under Code Ann. § 39-1103, the trial court was correct in concluding as a matter of law that the Georgia Gazette was legally qualified to be designated as the official organ of Chatham County.

*Judgment affirmed. All the Justices concur.*

ARGUED JANUARY 22, 1980 — DECIDED MAY 7, 1980.

*Thomas H. Gignilliat, Morton G. Forbes,* for appellant.

*Anton F. Solms, Jr., Gordon B. Smith, Steven E. Scheer, Don H. Harper, William N. Searcy, David W. Griffeth,* for appellees.