S97A1825. THE ATLANTA JOURNAL & THE ATLANTA CONSTITUTION v. CLARKE et al.
(497 SE2d 358)

BENHAM, Chief Justice.

This appeal calls for an interpretation of the provisions in OCGA § 9-13-142 for the designation of a newspaper as the "official organ" of a county, the newspaper in which legal advertisements are to be published. Under that section, a journal or newspaper qualifies for designation as legal organ only if it meets requirements for "continuous publication" and "85% paid subscription" for specified periods of time. OCGA § 9-13-142 (a). The designation and any changes in designation are made by a majority of the judge of the probate court, the sheriff, and the clerk of superior court. OCGA § 9-13-142 (b) & (c). The probate court judge is tasked additionally with making an annual report to the Secretary of State during the month of December of the name and address of the designee, and must also report to the Secretary of State any changes in designation. OCGA § 9-13-142 (d).

The Gwinnett County Post (Post) met the statutory requirements when it was designated the official organ of Gwinnett County in 1996. In 1997, however, The Atlanta Journal and The Atlanta Constitution (AJC) applied to replace the Post as official organ, alleging that the Post had reduced its proportion of paid subscribers below 85 percent by entering into a contract which obligated it to provide free copies to 30,000 Gwinnett residents. When the designating officials (appellees herein) denied the application, the AJC filed a petition for a writ of mandamus, demanding that the court compel the

designating officials to change the designation of official organ from the Post to the AJC. The trial court dismissed the action, holding that the Post had met the requirements at the time of designation and that the appointing officials had no duty to review the qualifications of the designated official organ continuously, but only to ensure that the newspaper meets the statutory requirements at the time that the name of the official organ is reported to the Secretary of State.

On appeal, the AJC contends that the trial court erred in holding that a competing publication cannot challenge the official organ status of a newspaper after the time of its designation, even when it is apparent that the designated newspaper has made a deliberate decision not to comply with the statutory requirements. Although that was not the trial court's holding, the effect is much the same, so we will address that issue, as framed. Before reaching that issue, however, we need to consider the actual rulings the trial court made.

First, it held that the Post was qualified at the time of its designation, and that holding is not challenged. Second, it held that the designating officials do not have a duty to monitor a designated official organ's qualifications continuously. Our reading of the statute supports that holding. Subsection (b) gives the designating officials the power to make the designation; subsection (c) gives them the power to change the designation; and subsection (d) places on the probate judge the duty to inform the Secretary of State each December of the identity of the designated official organ, and to inform the Secretary of State any time the designation is changed. Nowhere in the Code section are the designating officials given any responsibility for monitoring continuing qualification. We conclude, therefore, that under the statute as it existed when the Post was designated official organ, there was no statutory requirement that the designating officials confirm the official organ's qualifications at any time after designation. The trial court's holding to that effect was correct.

However, the trial court's third holding, that the designating officials must ensure that the designated official organ meets the statutory requirements at the time of the annual report to the Secretary of State in December, exceeds the actual requirements of the statute. Subsection (a) of the Code section was amended in 1997 to make a change in the qualifications of official organs. Under the pre-amendment statute, the paid circulation requirement was expressed simply: ". . . unless 85 percent of the circulation of the newspaper or journal is paid circulation." As amended, the requirement is more demanding: ". . . unless 85 percent of the circulation of the newspaper or journal is paid circulation and has been paid circulation, as established by an independent audit, for a period of 12 months prior to the newspaper's or journal's being declared or made the official organ." That statutory language does not, however, place a new duty

on the designating officials to ensure that the standards are met at any time other than when the newspaper is first designated as the official organ. There are compelling policy considerations which support the imposition of a requirement that existing official organs continue to satisfy the initial qualifications for designation, but under the present language of the statute, there simply is no such requirement. The imposition of such a requirement is beyond the authority of the courts and must await action by the General Assembly.

The issue framed by the AJC on this appeal, whether a competing publication can challenge the status of a legal organ, is thus answered: once a newspaper has been designated official organ, that status as official organ is not open to challenge on the ground that its paid circulation has dropped below the statutory requirement. Continued service as the official organ is a political decision for the designating officials.

That is not to say that no occurrence will trigger a requirement that the designating officials act to designate a new official organ. The statute recognizes that there may be occasions when the designating officials may find it proper to designate a different official organ at another time during the year. An obvious occasion would be when an official organ completely ceases to publish.

In summary, we conclude that OCGA § 9-13-142, in establishing the qualifications for designation of a newspaper or journal as the official organ of a county, has conferred on the sheriff, the clerk of superior court, and the probate judge an extremely broad discretion in determining when to change the designation. Since there is no duty placed on those officials by the statute to monitor compliance with the qualifications, we hold that the trial court, though its holding regarding the duty of the designating officials to make an annual determination of eligibility was wrong, was correct in dismissing the AJC's suit.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 2, 1998.

*Dow, Lohnes & Albertson, Peter C. Canfield, Sean R. Smith, Jill M. Wood,* for appellant.

*Heyman & Sizemore, William H. Major, George H. Myshrall, Jr., Carothers & Mitchell, Richard A. Carothers, Thomas M. Mitchell, Elaine W. Brooks,* for appellees.

*Hull, Towill, Norman & Barrett, David E. Hudson,* amicus curiae.