BARKETT, Circuit Judge,
concurring in result, in which TJOFLAT and KRAVITCH, Circuit Judges, join in full, and ANDERSON, BIRCH and WILSON, Circuit Judges, join in Part I:
In this case, Brian L. Grech sued Clayton County under 42 U.S.C. § 1983 for the actions of its sheriff in maintaining and recalling criminal warrants for a statewide computer database created and operated by the state of Georgia. The narrow question presented is whether the Clayton County Sheriff is a final policymaker for the county when performing these functions. I agree that the activities of this county sheriff in the particular area of maintaining and recalling criminal warrants for a state database did not implicate policymaking on behalf of the county. Thus, I concur that the county bears no liability for the actions of the sheriff here. As Judge Hull notes in her plurality opinion, this is the narrow holding of this case. See Plurality Opinion at 1347, n. 46.
No further determination about the status of Georgia sheriffs is necessary. However, the plurality ventures far beyond the discrete question raised in this case and suggests that Georgia sheriffs are state officers for law enforcement purposes generally, rather than just in their GCIC role. This erroneous characterization of Georgia law compels a response.
I. DETERMINING FINAL POLICYMAKING AUTHORITY
The sole question before us is whether the sheriff acts as a final policymaker for Clayton County in maintaining the GCIC records required by the State of Georgia. A local government entity is liable under § 1983 for violations of federal law caused by the conduct of an individual who acts as a final policymaker (i.e., establishes the custom, policy, ordinance, regulation, or decision) “in a particular area or on a particular issue.” McMillian v. Monroe County, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); see also Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Whether a local government representative is a final policymaker in a particular area or on a particular issue for purposes of § 1983 is determined by examining state law. McMillian, 520 U.S. at 785, 117 S.Ct. 1734; Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).
Georgia’s constitution, statutes, and case law designate sheriffs as county, not state, officials.[1] Nevertheless, although the sheriff generally acts as a county officer, the specific program at issue here charges the sheriff, as one of several local officers, with a well-defined record-keeping function on behalf of the state. Thus, the particular area involved in this case did not *1351 implicate a county area of responsibility. Indeed, although the parties before us agreed otherwise, and thus have not litigated the issue, the sheriffs duties in submitting information for the state GCIC database suggest that the sheriff may not be a final policymaker at all with respect to this function, making his state or local affiliation irrelevant.[2] An official must have discretion in a particular area of law in order to exercise final policymaking authority in that area and may not be subject to significant review. This Court has “squarely held that ... ‘[f]inal policymak-ing authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review.’ ” Denno ex rel. Denno v. School Bd., 218 F.Bd 1267, 1276 (11th Cir.2000) (quoting Scala v. City of Winter Park, 116 F.3d 1396, 1401 (11th Cir.1997)). With regard to the GCIC, the sheriff appears to be simply a government official performing a ministerial task which, in this instance, he performed negligently.
II. THE PLURALITY’S MISTAKEN DISCUSSION OF GEORGIA LAW
The foregoing inquiry is sufficient to resolve this case. However, because the plurality adds sweeping propositions not relevant to the case before us that completely misconstrue Georgia law, I am compelled to address the remainder of its opinion.
To determine whether an actor is a final policymaker under § 1983 we must examine state law, which originates with the state’s constitution. The plurality correctly begins its general discussion of Georgia law by acknowledging that the Georgia Constitution designates sheriffs as county, not state, officers. However, the plurality then disregards this designation with the pronouncement that “we must focus on control, not labels.”[3] With these few words, the plurality illustrates its misapprehension of this case.
Initially, the plurality asserts a false justification for looking beyond the plain language of the Georgia Constitution based on a badly distorted reference to the McMillian Court’s use of the term “labeling.” This misstatement of McMillian does not support the plurality’s substitution of its own views for the express directive of the Georgia Constitution.[4]
The plurality then compounds this error by drawing two mistaken inferences regarding the concept of control, upon which its analysis relies so heavily. First, the plurality reasons that because the Georgia Constitution permits the legislature to enact general rules governing some aspects of the sheriffs office, the sheriff must be a state officer. But, as I discuss more fully below, there is no significant distinction in kind between Georgia laws regulating the responsibilities, qualifications, training, and salary of sheriffs and parallel provisions of the state’s code which regulate the same attributes with respect to the quintessential county officers: county commissioners. If any local officeholder whose powers and privileges are defined in some sense by state law thereby becomes a state agent, there could be no county officers, since all local government is a creature of state authority.[5]
Second, the plurality erroneously infers that sheriffs are state officers because *1352 Georgia law provides that they are not employees of the board of county commissioners. It is true that sheriffs are not employees of the county commission, but this is completely irrelevant. Georgia has not established a monolithic structure of county government with the county commission at its head, but rather has chosen to establish several independent county offices which share equally in the responsibilities and powers of county governance. No constitutional county officer is “employed” by any other. Therefore, the mere fact that sheriffs are not employed by the county commission neither has any bearing on whether sheriffs are state officers, nor leads to that erroneous conclusion.[6] I address each of the plurality’s arguments after first setting out an appropriate constitutional analysis under Georgia law.

A. Sheriffs in the Georgia Constitution

Georgia’s highest law is unequivocal in its designation of sheriffs as county, not state, officials. It specifically enumerates sheriffs under the heading, “County .Officers; Election; Term; Compensation.” Ga. Const, art. IX, § 1, para. 111(a). Sheriffs appear in Article IX, which addresses “Counties and Municipal Corporations,” and not Article V, which addresses the state’s “Executive Branch.” Hence, sheriffs’ status as county officers is clearly reflected in the very organization of Georgia’s fundamental political charter.
The Supreme Court underscored the importance of state constitutions in McMillian. In McMillian, 520 U.S. at 795, 117 S.Ct. 1734, the Court relied most heavily on the Alabama Constitution in determining that sheriffs in that state had become state officials through a protracted struggle in the late nineteenth century to prevent renegade local sheriffs from abusing their office. As the Court described, the history of Alabama sheriffs was unique in that it had left imprints on several versions of the state’s evolving constitution, each of which manifested a stronger resolve to discipline sheriffs who tolerated or encouraged lynchings. See id. at 787-89, 117 S.Ct. 1734. As early as 1875, the Court noted, a new Alabama Constitution included sheriffs for the first time among the officials comprising the “state executive department.” Id. at 787, 117 S.Ct. 1734 (internal quotation marks omitted). Two amendments subsequently incorporated in the 1901 Alabama Constitution went still further in transforming sheriffs from county into state officials. First, the constitution’s framers made it an impeachable offense for sheriffs to allow lynch mobs to abduct and kill prisoners. Second, they authorized the governor to initiate impeachment proceedings in the state supreme court instead of local county courts. In making these changes, the framers aimed to remedy the “failure of county courts to punish sheriffs for neglect of duty,” in part by “augmenting] the power of the Governor.” Id. at 788, 117 S.Ct. 1734 (quoting Parker v. Amerson, 519 So.2d 442, 443-444 (Ala.1987)).
It was this unique constitutional history, underscoring the language of the constitution, that the Supreme Court found decisive in its determination that Alabama sheriffs today act as state rather than county officials when engaged in the law enforcement functions of investigating crimes and collecting evidence for trial. At no point, however, did the McMillian Court suggest that the history it found compelling in Alabama was likely to be duplicated in other states. Indeed, the Court emphasized that variation among different states’ sheriffs could be expected in light of states’ “wide authority to set up their state and local governments as they *1353 wish.” Id. at 795, 117 S.Ct. 1734. “[T]here is no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another” because “both the role of sheriffs and the importance of counties vary from State to State.” Id.
The Supreme Court’s remarks regarding states’ authority to provide for sheriffs of different stripes must be borne in mind when turning from the Alabama to the Georgia Constitution. Several important differences between the two state constitutions are pertinent. First, the language of the Georgia Constitution, in expressly including sheriffs under the heading “County Officers,” provides a plainer answer to the question of sheriffs’ state or local status than do counterpart provisions of the Alabama Constitution. Second, whereas the Alabama Constitution includes sheriffs within an article addressing the executive branch of the state government, Georgia’s constitution discusses sheriffs in an article addressing local government. Third, there is a marked contrast between the evolution of the office of sheriff in the Alabama Constitution and the consistency with which Georgia has provided for sheriffs to act as county officials. As the McMillian Court explained, sheriffs’ designation as state officers in the Alabama Constitution emerged out of a sustained effort to remedy their previous dereliction of duty by making them directly accountable to the governor. Georgia’s constitutional history, by contrast, reveals only an untempered resolve to enshrine sheriffs’ status as county officers and their consequent independence from state lawmakers.
In writing the present Georgia Constitution, the drafters undertook to eliminate an ambiguity created by previous charters’ failure to designate exactly which county officers were beyond the state legislature’s power to abolish.[7] Toward this end, they specifically included sheriffs among the four county officers named in a new pará- *1354 graph of Article IX. The framers clearly-intended in doing so to make a sheriffs constitutional status as a county officer inalterable by the Georgia General Assembly.[8]
Furthermore, Georgia courts had long recognized sheriffs as county officers when the Georgia Constitution took its present form, and in constitutionalizing this status, the framers clearly understood themselves to be formalizing existing law rather than breaking new ground.[9] As early as 1895, Georgia’s supreme court assumed that sheriffs were county officers. Massenburg *1355 v. Bibb County Comm’rs, 96 Ga. 614, 23 S.E. 998, 999 (1895). In Truesdel v. Freeney, 186 Ga. 288, 197 S.E. 783, 786 (1938), the Georgia Supreme Court addressed the matter more explicitly, holding that the “tax-collector and tax-receiver and the sheriff function with reference to State matters, as well as county matters; but they are not regarded as State officers.” Truesdel, 197 S.E. at 786.[10] Truesdel has since become a foundational case for determining whether a public official is a state or county officer. In Best v. State, 109 Ga.App. 553, 136 S.E.2d 496, 497 (1964), for example, the Georgia Court of Appeals cited Truesdel’s holding that sheriffs need not be “regarded as State officers” even though they sometimes act on “state matters.” Best, 136 S.E.2d at 497. See also Fortson v. Weeks, 232 Ga. 472, 208 S.E.2d 68, 71 (1974); Wood v. State, 219 Ga. 509, 134 S.E.2d 8, 9 (1963).[11] Not only is the Georgia constitutional language, structure and history clear, making further consideration of its sheriffs’ status unnecessary, there are at least thirty-one Georgia cases which specifically recognize sheriffs as officers of the county.[12] Far from marking a break with the tradition reflected in these cases, the most recent constitutional revi *1356 sion elevated the doctrinal consensus into an organizing principle of the state’s most fundamental political charter. The present constitution’s language emerged from, and in turn restated, well-settled state law.

B. Georgia’s Constitutional Designation Cannot Be Dismissed as a Mere “Label”

The plurality resists both the plain language and the structure of the Georgia Constitution, as well as Supreme Court precedent, by relying on a phrase in McMillian which it misunderstands and which does not apply to this case. Specifically, it states that “McMillian teaches that state law cannot answer the § 1983 policymaker question by ‘simply labeling’ an official as a county or state official” and, therefore, we “must focus on control” over the official.[13] But the plurality takes this reference to “simply labeling” an official completely out of context and, in so doing, forsakes Georgia law’s clearest and highest authority: the Georgia Constitution.
In McMillian, the Supreme Court was confronted with the unusual situation where a state constitution explicitly designated sheriffs as state, not county, officers. McMillian, 520 U.S. at 786, 117 S.Ct. 1734. The Court was concerned with the possibility that a state might improperly shield counties from § 1983 liability by deliberately mislabeling what were really county officials as state officials. Accordingly, the Court wanted to ensure that the Alabama Constitution’s labeling of sheriffs as state officers was not simply a device for avoiding liability by masking what were, in reality, local government representatives. Id. at 786, 796, 117 S.Ct. 1734.
This concern, however, is irrelevant where (as here) there is no contention that the state has mislabeled an officer to avoid liability. Indeed, no possible incentive exists for states to designate what are really state officials as county officials, since such a mis-designation would actually create liability that would not otherwise attach. Certainly, when there is evidence that a state is attempting “to insulate counties and municipalities from Monell liability by change-the-label devices,” id. at 805, 117 S.Ct. 1734 (Ginsburg, J., dissenting), McMillian instructs courts to look beyond where the law “purports,” Praprotnik, 485 U.S. at 126, 108 S.Ct. 915, to locate final policymaking authority. But this rationale does not apply in the converse situation, such as the one presented in this case, where the “label” serves no purpose of obfuscation or insulation.[14]
There is no reason to go beyond the constitution in Georgia, where the constitu *1357 tional language establishes the basis for local liability. Thus, the McMillian Court’s concern over (mis)labehng is inap-posite to this ease.[15]

C. The Plurality’s Mistaken Conception of Georgia Sheriffs as State Actors

Because the Georgia Constitution’s language, structure, and history plainly demonstrate that its framers meant precisely what they said in “labeling” Georgia sheriffs as “county officers,” we should accord this designation its plain meaning. The plurality nonetheless easts aside this most fundamental state-law authority in search of some other basis to conclude that the sheriff acts for the state. Specifically, the plurality ignores Georgia’s express constitutional language on two grounds: (1) that sheriffs are subject to regulation by the state government; and (2) that sheriffs are not “employees” of the county commission. Neither of these observations demonstrate that sheriffs are state officers.

1. Sheriffs’ Regulation Under Georgia Law

Subjecting an official to state-law regulation does not turn that official into a state agent. The plurality opinion overrides the clear language and structure of the Georgia Constitution on the basis of a few scattered provisions of Georgia law which are, in fact, either neutral with respect to our inquiry or actually supportive of the view that sheriffs are county officers.[16]
For example, the plurality argues that because Georgia law gives sheriffs the au *1358 thority to make arrests for traffic violations outside their counties, they must be state officers. But the same provision that authorizes sheriffs to make these arrests outside their counties, see Ga.Code Ann § 40-13-30 (2002), grants county and city police officers analogous powers. See, e.g., State v. Heredia, 252 Ga.App. 89, 555 S.E.2d 91 (2001) (county police); Poss v. State, 167 Ga.App. 86, 305 S.E.2d 884 (1983) (city police).[17] Surely this grant of power does not make a county or city policeman a state officer.
The plurality opinion’s reliance on Georgia sheriffs’ suspension procedures as evidence of state-officer status is also misplaced. It is true that the Governor has some role in the suspension of sheriffs.[18] However, the plurality opinion fails to explain why it focuses on the governor’s power to suspend the sheriff rather than the governor’s lack of power to remove the sheriff. In McMillian, the Supreme Court was impressed by the State of Alabama’s amendment of its constitution to augment the governor’s power to remove sheriffs, see McMillian, 520 U.S. at 788, 117 S.Ct. 1734, but the Georgia provisions cited by the plurality are hardly of comparable character. Indeed, these provisions not only grant the governor no removal power, but also forbid the governor from suspending a sheriff for longer than ninety days. See Ga.Code Ann. § 15-16-26(e). The governor may not even suspend the sheriff without appointing and receiving the affirmative recommendation of an investigatory committee. See Ga.Code Ann. § 15-16-26(a), (c). Outside of this process, “the Governor and the Attorney General can take no official action against a sheriff unless there has been a criminal indictment.” Gipson v. Bowers, 263 Ga. 379, 434 S.E.2d 490, 491 (1993).[19] The governor’s real but limited suspension power and his lack of removal power are as readily viewed as evidence of a lack of control as of control.[20]
Likewise, the plurality’s discussion of the county commission’s direct control over county police departments is irrelevant to this case.[21] Just because a county *1359 is responsible for one entity does not preclude its responsibility for another. Accordingly, the existence of county police departments (whose officers’ minimum qualifications are set by Georgia state law and not by the county commission) has no bearing on whether the sheriff represents the county.[22] If it did, the sheriff could not be a state officer either, because the state also has its own police force. Ga. Code Ann. § 35-2-30, et seq. (2002). The statute authorizing county police departments does not aid us one way or another in answering the present inquiry.
Similarly, the plurality gains no ground by showing that deputy sheriffs are neither employees of the county commission nor automatically subject to the county civil service system.[23] There is no question that deputy sheriffs are not employees of the county commission. They are instead employees of an independent county officer; the sheriff. The plurality cites five cases holding that the county is not liable for the torts of deputy sheriffs performing law enforcement functions,[24] but as the plurality concedes,[25] three of these cases involved respondeat superior liability, which is not applicable in this context.[26] The fourth case, Chadwick v. Stewart, 94 Ga.App. 329, 94 S.E.2d 502 (1956), says nothing about county liability at all. The final case cited, Wayne County Bd. of Comm’rs v. Warren, 236 Ga. 150, 223 S.E.2d 133 (1976), is inapplicable, primarily because it has been overruled by Monell.[27] Further, the fact that deputy sheriffs are not automatically covered under the county civil service system is of no import;[28] they are not covered by the state civil service system either. See Ga.Code Ann. *1360 § 45-20-1 et seq. (2002). That deputies may be covered by the county civil service system at all[29] (and not the state system) only strengthens the conclusion that their government affiliation is local. These two showings do not advance the idea that sheriffs are state officers.
The plurality’s state-law sovereign immunity argument fares no better.[30] As the plurality concedes, this doctrine simply does not control our analysis under § 1983.[31] It is no more relevant than any other piece of Georgia law from which we can glean evidence of the sheriffs state or county affiliation. Moreover, to the extent the state sovereign immunity doctrine can aid us by analogy, its application in Georgia law supports the position that the sheriff is a county officer. As is the case with claims against county commissioners, it is the county’s immunity that controls when the sheriff is sued, and it is the county that defends the sheriff.[32] See, e.g. Gilbert v. Richardson, 264 Ga. 744, 452 S.E.2d 476, 479 n. 4 (1994) (“Although Walker County is not a named defendant in this action, Millard was sued in Ms capacity as Walker County sheriff. Accordingly, the Gilberts’ claims are, in essence, claims against Walker County and Millard may raise any defense available to the county, *1361 including sovereign immunity.”);[33] Logue v. Wright, 260 Ga. 206, 392 S.E.2d 235 (1990) (holding that it is county liability defenses which apply to actions against sheriffs); Haywood v. Hughes, 238 Ga. 668, 235 S.E.2d 2 (1977) (holding that the statute which is now Ga.Code Ann. § 45-9-21 (2002) authorized Georgia counties to pay for their sheriffs’ legal costs in civil rights suits against the sheriffs);[34] Haralson County v. Kimball, 243 Ga.App. 559, 533 S.E.2d 762 (2000) (holding that Ga. Code Ann. § 45-9-21(2), which allows a “county officer” to hire his own attorney at the county’s expense when the county attorney has a conflict of interest, applies to sheriffs). State-law sovereign immunity is inapplicable to our inquiry and in no way suggests that sheriffs are state officers.
The plurality’s final remaining contention — that because sheriffs are subject to various state rules, this form of “control” renders them state officers — proves far too much. In fact, a consistent application of the plurality opinion’s approach would effectively transform not just Georgia’s sheriffs, but all of its local governmental authorities into state officers. This would obliterate the distinction which underlies both Monell and McMillian.
Even assuming arguendo that this approach was a valid one, every regulation (or “control”) that the plurality cites to show that sheriffs are state officers has a parallel provision that applies to county commissioners, who are indisputably county officers. For example, while it is true that the Georgia Code establishes certain uniform powers and duties for sheriffs throughout the state, see Ga.Code Ann. § 15-16-10 (2001 & 2002 Supp.), a parallel state-law provision establishes the “powers and duties” of county commissioners. See Ga.Code Ann. § 36-5-22.1(a) (2000). Likewise, in addition to requiring sheriffs to complete a training course administered by the Georgia Sheriffs’ Association, see Ga.Code Ann. § 15-16-3(b) (2001), the state prescribes comparable training for county commissioners, all of whom must complete at least eighteen hours of training on matters pertaining to the administration of county governments. See Ga. Code Ann. § 36-20-4 (2000). Similarly, the Georgia Code establishes a minimum salary for sheriffs, see Ga.Code Ann. § 15-16 — 20(a)(1) (2001),[35] but also contains an analogous provision limiting the salaries of county commissioners. See Ga.Code Ann. §§ 36 — 5—24(b)(1) (2002 Supp.); 36-1-11.1 (2000) (limiting commissioners’ power to raise their salaries and pensions). Finally, Georgia’s establishment of minimum qualifications for sheriffs must be viewed in concert with similar minimum qualifications for would-be county commissioners. See Lucas v. Woodward, 240 Ga. 770, 243 *1362 S.E.2d 28, 31 (1978) (holding commissioners subject to the constitutional provision setting minimum requirements for all county officers, including sheriffs). In sum, while Georgia statutes outline sheriffs’ duties, salaries, accountability, and minimum qualifications, the existence of parallel legislation regarding county commissioners militates strongly against construing these provisions as an indication of state control.

2. Sheriffs Are Independent Constitutional County Officers, Not Employees of the County Commission

In addition to its misunderstanding of the import of state regulation, the plurality misinterprets the sheriffs relationship with the county commission by contending that § 1983 liability depends upon the subservience of one constitutional officer to another. Georgia’s sheriffs are not employees of the County Commission. Nor are they employees of the state. In fact, they are not “employees” at all. They are independent constitutional officers.[36]
The question here is not whether a county commission controls the sheriffs office but whether the county controls the sheriffs office. The distinction is important, because when the sheriff exercises his own discretionary authority he is, by definition, exercising final authority on behalf of the county. As the Fifth Circuit has stated:
In premising the county’s liability on whether its governing body had ratified the alleged actions of these officials, i.e., whether they had acted pursuant to an official county policy or custom, the district court inadvertently overlooked the possibility that the sheriff and district attorney were themselves the final policymakers with respect to the matters under their jurisdiction whose actions, to the citizens of Upton County, were the actions of the county itself. Two configurations can lead to a municipality’s liability under section 1983 for the acts of its officials. In the first ... a municipality’s final policymakers are held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees. In the second, the municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of *1363 goals and the determination of how those goals will be achieved. We find the latter, not the former, to be applicable in the instant case.
Turner v. Upton County, 915 F.2d 133, 136 (5th Cir.1990). In Praprotnik, the Supreme Court clearly recognized the viability of such a structure of co-equal departments or officials as final policymakers. See Praprotnik, 485 U.S. at 126, 108 S.Ct. 915. Specifically, the Court stated that “there will be cases in which policymaking responsibility is shared among more than one official or body.” Id. When one county institution cannot review another, and vice versa, each is a final policymaker for the county:
Assuming that applicable law does not make the decisions of the Commission renewable by the Mayor and Alderman, or vice versa, one would have to conclude that policy decisions made either by the Mayor and Alderman or by the Commission would be attributable to the city itself.
Id. (emphasis added). Thus, courts have credited the possibility that § 1983 liability may obtain because an official outside the county legislative body nonetheless acts as the county’s final policymaker in a particular area, or on a particular issue.
This analysis applies with particular force here, where the county sheriff is recognized as an independent county officer by the state constitution itself. See, e.g., Chaffin, 415 S.E.2d at 907 (referring to the sheriff as an “elected constitutional officer”). The sheriff is not an employee of the County because Georgia local government operates on a separation of powers principle, with the sheriffs serving as independent county officers.[37] Though the plurality’s analysis presupposes that sheriffs must answer directly to some higher authority, Georgia has made them independent county officers answerable to the voters of the county.[38] A failure to recognize this salient feature of Georgia law disrespects Georgia’s entitlement to structure its county governments as it sees fit.[39]
*1364 This separation of powers structure can be illustrated by a quick examination of the process by which counties appropriate and spend limited local resources. While the county commission has full authority to determine the amount of the sheriffs funding, the sheriff has unfettered discretion to expend these resources in the performance of his duties. The Georgia Supreme Court has time and again taken care to preserve the delicate balance of power between these two sectors of county government, thereby vindicating the county commission’s general responsibility for the public fisc without endorsing any notion of direct control over the sheriff in the execution of his or her official duties. See, e.g., Randolph County, 396 S.E.2d at 903; Chaffin, 415 S.E.2d at 907.[40] The sheriffs discretion in utilizing county funds does not negate his position as a county official, any more than the independence of the President from the United States Congress negates his position as an officer of our federal government.[41] The tension between the commission’s budgetary authority and the sheriffs entitlement to place certain conditions on its exercise suggests a separation of powers akin to that of the federal government: each sector of the county government both retains complete independence in its own sphere and represents the county when it acts.
III. CONCLUSION
The sole issue before us in this case is whether a sheriff has final policymaking authority when maintaining and recalling criminal warrants in Georgia’s GCIC database. On the particular facts before us, I conclude that the sheriffs role in this capacity was not a county area of responsibility. However, I find absolutely no support for the plurality’s extraneous suggestion that Georgia law designates sheriffs as anything other than county officers.

. See infra Part II.

. For example, among other things, the state itself is charged with auditing the GCIC and has the authority to correct erroneous entries and impose sanctions for non-compliance. See Ga. Comp. R. & Regs. § 140 — 2—.19(1) (2001).

. Plurality Opinion at 1332.

. See infra Part II, B.

. See infra Part II, C, 1.

. See infra Part II, C, 2.

. The constitution’s drafters spoke directly to the ambiguity which the 1983 constitution aimed to rectify. Members of the subcommittee charged with proposing pertinent revisions had the following colloquy regarding the absence of any systematic enumeration of county officers in the constitution they set out to amend:
CHAIRMAN COVERDELL: Just take the sheriff, we've got him enumerated.
MR. HILL: He is the only one.
MR. BURGESS: He is the only one.
MR. HENRY: You’ve got the tax receiver, tax collector, treasurer.
CHAIRMAN COVERDELL: Are they not enumerated? I thought they were.
MR. HILL: The county treasurer and the tax receiver, tax collector are mentioned in Paragraph 6 which authorizes the General Assembly to consolidate the offices of treasurer and tax receiver and tax collector into the new office of tax commissioner.
REPRESENTATIVE EVANS: What about the clerk? That would be another article?
MR. HILL: The clerk of court is not mentioned in the constitution specifically. He is mentioned by reference in the sense that it now states that the county officers shall be elected, and by judicial decision it has been determined that clerks of superior court and about six others—
REPRESENTATIVE EVANS: How about probate court?
MR. HILL: Yes, about six others — I forget who all they are.
MR. CARLYLE: All of those are by judicial decision because the county officers in Paragraph 8 doesn't list who county officers are. It may list county commissioners up here under Paragraph 6, but it doesn't say that they are county officers; the court has said that. The same way with county treasurer.
See Select Committee on Constitutional Revision: Meetings of the Committee To Revise Article IX, vol. 1, at 69 (Ga. Jul. 23, 1980) (transcript of subcommittee meeting).
In light of the confusion created by the absence of a systematic enumeration of county officers, the drafters of Georgia's present constitution undertook to fill this gap. See id. at 72-73 ("Mr Hill: I think it would be very helpful to all concerned to have a clear state *1354 ment of who the county constitutional officers are.... [T]he fact that there are certain recognized elected county constitutional officers at the present time and we don't know who they are by the constitution, it’s something we can rectify....”). As ultimately adopted, Article IX, Section I, Paragraph III of the Georgia Constitution names as county officers "[t]he clerk of the superior court, judge of the probate court, sheriff, tax receiver, tax collector, and tax commissioner, where such office has replaced the tax receiver and tax collector.”

. The drafters resoundingly rejected a suggestion that would have given the Georgia legislature power to decide whether the sheriff's office would exist and by whom it could be filled. The following exchange amply demonstrates the drafters’ presumption that the office of sheriff would be independent of the General Assembly:
MS. GREENBERG: Could we possibly change this radically by making it very flexible and providing that the General Assembly shall provide for county officials and provide that they either be elected or appointed, and also the General Assembly shall provide for their duties and their terms of office and their eligibility and their qualifications, just a very flexible kind of statement in the constitution and take away mention of all these other officers, and that would also cover consolidated governments, counties and cities.
MR. CARLYLE: I’m sure you could do that, but the problem is it's—
MR. FINDLEY: It's a wild-eyed idea.
CHAIRMAN COVERDELL: That would have to come under wild-eyed schemes I’m afraid.
REPRESENTATIVE EVANS: That has that snowball’s chance of getting through.
Id. at 71.
The plurality opinion appears to read my discussion here as an argument that the plain language of Georgia's constitution makes the "powers and duties of the constitutional sheriff's office” inalterable by the Georgia legislature. Plurality Opinion at 1333 n. 13. I do not suggest that Georgia's General Assembly may not regulate the office of sheriff. It may, and it does, just as it regulates the office of county commissioner. See infra Part II, C. The point here is that the constitutional framers specifically rejected the opportunity to commit the sheriff's office to the General Assembly’s authority and instead chose to make it a constitutional one, thus limiting the legislature's ability to make changes in the sheriff’s status.

. The following exchange shows the drafters attending to judicial precedent regarding the identity of county officers:
REPRESENTATIVE EVANS: ... are we going to name the constitutional officers?
MR HILL: Yes.
CHAIRMAN COVERDELL: They would be named.
REPRESENTATIVE EVANS: Which ones are we going to name?
MR. HILL: The ones that have been judicially determined to be constitutional officers. There are seven, and I don’t know — I can’t list them off the top of my head.
MR. FINDLEY: I can tick them off. Sheriff, clerk of the superior court, tax collector, tax receiver or tax commissioner, judge of the probate court, treasurer — did I mention him? — coroner and surveyor. You always forget those, but they're in there too.
Id. at 75. Although the drafters never questioned the propriety of including sheriffs in their list of county officers, not all of the office holders they discussed were ultimately included in the enumeration that now appears at Article IX, Section I, Paragraph III. Omitted were county coroners, county surveyors, and treasurers. Clearly, drafters of Georgia's present constitution made a deliberate choice to preserve sheriffs' status as one of a select group of county officers formally recognized by the state’s constitution.

. The plurality opinion seeks to distinguish Truesdel because the main issue facing the Georgia Supreme Court concerned a municipal clerk. However, the Truesdel holding is actually quite relevant for our purposes. The question in Truesdel was whether a municipal clerk was a local officer or a state officer. The court found the clerk to be a local officer, relying on factors similar to those we must consider under McMillian, such as whether the county or state paid his salary and whether he reported to any state officials. It treated the sheriff as a touchstone of local governing authority by reasoning that those attributes which municipal clerks shared with sheriffs weighed in favor of finding clerks to be local officials. In addition to the sheriff, the court referenced the county status of the probate judge, the clerk of the superior court, and the tax officials — the very officers with whom the sheriff is now listed in article IX of the Georgia Constitution. Compare Truesdel, 197 S.E. at 786 (Ga.1938) with Ga. Const. Art. IX, Sect. I., Par. III.

. That the status of sheriffs as county officers is more than a formal designation is clear from cases in which this status controlled the outcome. In Carter v. Veal, 42 Ga.App. 88, 155 S.E. 64 (1930), the Georgia Court of Appeals held that a person could not simultaneously serve as county coroner and deputy sheriff under Section 45-2-2 of the Georgia Code, which forbids holding more than one county office at a time. This rule’s application to sheriffs was reaffirmed in Black v. Catoosa County Sch. Dist., 213 Ga.App. 534, 445 S.E.2d 340 (1994) (enjoining deputy sheriff from serving as member of county school board). The rule has also been recognized in a series of opinions of the Georgia Attorney General. See 1997 Op. Ga. Att'y Gen. 18; 1965-66 Op. Ga. Att’y Gen. 129-30; 1958-59 Op. Ga. Att’y Gen. 29-30.

.This figure includes twenty-three cases not discussed elsewhere in this opinion where the sheriff's county-officer status plays a role in the decision: See Cameron v. Lang, 274 Ga. 122, 549 S.E.2d 341 (2001); Seay v. Cleveland, 270 Ga. 64, 508 S.E.2d 159 (1998); Atlanta Journal v. Clarke, 269 Ga. 33, 497 S.E.2d 358 (1998); In re Inquiry Concerning a Judge, 265 Ga. 326, 454 S.E.2d 780, 783 (1995); Hart v. Madden, 256 Ga. 497, 349 S.E.2d 737, 738 (1986); Southeastern Newspapers Corp. v. Griffin, 245 Ga. 748, 267 S.E.2d 21 (1980) (citing two others); Griffin v. Chatham County, 244 Ga. 628, 261 S.E.2d 570 (1979) (county commission may contract on behalf of sheriff); Lovett v. Bussell, 242 Ga. 405, 249 S.E.2d 86 (1978); Wolfe v. Huff, 232 Ga. 44, 205 S.E.2d 254 (1974); Warren, 202 S.E.2d at 409; Kiker v. Worley, 223 Ga. 736, 157 S.E.2d 745, 746 (1967); Reed v. Southland Publishing Co., 222 Ga. 523, 150 S.E.2d 817, 817 (1966); Lewis v. Gay, 215 Ga. 90, 109 S.E.2d 268, 275 (1959); Davis v. Logan, 206 Ga. 524, 57 S.E.2d 568, 569 (1950); Collins v. Mills, 198 Ga. 18, 30 S.E.2d 866, 866 (1944); Seaboard Air-Line R. Co. v. Wright, 157 Ga. 722, 122 S.E. 35, 36 (1924); Rose v. State, 107 Ga. 697, 33 S.E. 439 (1899); Brady v. Joiner, 101 Ga. 190, 28 S.E. 679 (1897); Haralson County v. Kimball, 243 Ga.App. 559, 533 S.E.2d 762 (2000); *1356 Malcom v. Newton County, 244 Ga.App. 464, 535 S.E.2d 824 (2000); Mayo v. Fulton County, 220 Ga.App. 825, 470 S.E.2d 258 (1996); Landis v. Rockdale County, 206 Ga.App. 876, 427 S.E.2d 286 (1992); Feise v. Cherokee County, 207 Ga.App. 17, 427 S.E.2d 294 (1992) (examining the county’s liability when the tortfeasor was a deputy sheriff).

. Plurality Opinion at 1330.

. The Court’s concern with change-the-label devices traces to Praprotnik, where Justice O’Connor explained that "whatever analysis is used to identify municipal policymakers, egregious attempts by local government to insulate themselves from liability for unconstitutional policies are precluded....’’ Praprotnik, 485 U.S. at 127, 108 S.Ct. 915 (internal citations omitted). In McMillian v. Johnson, 88 F.3d 1573 (11th Cir.1996), aff'd sub nom McMillian, 520 U.S. at 781, 117 S.Ct. 1734, we also addressed the labeling concern hut emphasized that a state constitution’s designation of a sheriff as a county or state official should not be cast aside lightly;
We recognize that a sheriff’s designation as a state official is not dispositive, but such a designation is relevant to whether a sheriff exercises state or county power. McMillian would have us disregard Alabama’s deci *1357 sion to make a sheriff a state official, characterizing it as nothing more than a label. Instead, we heed the Supreme Court's admonition that federal courts respect the way a state chooses to structure its government.
McMillian, 88 F.3d at 1580-81 (emphasis added). The plurality opinion cites the first part of this passage but ignores the underlined warning. Plurality Opinion at 1330 n. 7.

. The plurality characterizes my emphasis on Georgia's constitutional text as a rejection of "the relevance of McMillian’s functional and control analysis to this case.” Plurality Opinion at 1332 n. 10. While I do believe we must give strong deference to the state constitution’s language, the plurality’s statement ignores my thorough functional analysis of Georgia's constitutional history, case law, and code. The plurality opinion also misreads the Supreme Court’s treatment of Alabama law. It is true that in McMillian the Supreme Court declined to give controlling force to certain Alabama statutory provisions tending to suggest that the sheriff might be a county officer, but it did so because "in light of the Alabama Supreme Court's conclusion that sheriffs are not state officials according to the State Constitution ... we think any contrary implication in the code is entitled to little weight.” McMillian, 520 U.S. at 792 n. 7, 117 S.Ct. 1734. The Court’s privileging of the Alabama Constitution over Alabama statutes remained firm despite its acknowledgment that some of these statutory provisions were "important” and that "some evidence in Alabama law” supported the view that sheriffs were county officers. Id. at 791, 793, 117 S.Ct. 1734. By contrast, the plurality's justification for discarding the Georgia Constitution's unequivocal designation of sheriffs as county officers places undue weight on fragmentary and peripheral provisions of the Georgia Code.

. The plurality cites Hannah v. State, 212 Ga. 313, 92 S.E.2d 89 (1956), seemingly suggesting that the common law origins of the Georgia sheriff's office make him a state officer. It is worth noting -that Georgia sheriffs themselves, speaking through the Georgia Sheriffs' Association, see their common law heritage differently:
In Georgia, the Sheriff is both a constitutional and a county officer. The constitutionality of the office derives primarily from English Common Law. The status as a county office is drawn from a number of general constitutional provisions relating to the office.
Georgia Sheriffs' Association web cite, . at www.georgiasheriffs.org/offsheriff.html (2003).

. The sheriff has discretion also to transfer prisoners to safer jails outside the county, but only to other county jails not state prisons.

. Plurality Opinion at 1336 (citing Ga.Code Ann. § 15-16-26 (2002)).

. The plurality suggests that I misinterpret Gipson by failing to read it in the context of the limited suspension power granted the governor by Ga.Code Ann. § 15-16-26. While the state court in Gipson may have spoken somewhat broadly in stating that the governor “can take no action” against a sheriff absent a criminal indictment, Gipson remains indisputable authority for the governor's lack of any removal power. The plurality fails to come to terms with this aspect of Georgia law, preferring instead to treat the governor's suspension power as the only relevant consideration in the assessment of gubernatorial "control” over sheriffs.

. Moreover, Georgia courts have made clear that a sheriff's removal from office is governed by his status as a county officer under state law. See Cole v. Holland, 219 Ga. 227, 132 S.E.2d 657, 660 (1963) (stating that a sheriff's removal from office is governed by "the constitutional provision which declares that a county officer shall be removed for malpractice in office”); Walker v. Devinney, 222 Ga. 320, 149 S.E.2d 657, 658 (1966) (holding that a statute punishing bribery of local officials applied to county sheriffs because "[t]he Sheriff of Fayette County is an officer of a political subdivision of this State”); Best, 136 S.E.2d at 496-97 (holding that a sheriff could not be indicted under a code section governing the bribery of "any ... officer of this State”).

. See Plurality Opinion at 1338-39.

. See Plurality Opinion at 1336 (citing Ga. Code Ann. § 36-8-1, et seq.).

. Plurality Opinion at 1336.

. Plurality Opinion at 1335-37.

. See Plurality Opinion at 1337 n. 21.

. See Plurality Opinion at 1331.

. The plurality’s treatment of Wayne is misguided for two major reasons. First, though the party at issue in Wayne was a sheriff, the actual holding and the cases the court cited concerned all county officers qua county officers. See, e.g., id. at 134 ("Except for the payment of the premiums above mentioned, a county has no liability in connection with the violations of the civil rights of any person by a county officer.”); Bailey v. Fulton County, 111 Ga. 313, 36 S.E. 596, 596 (1900) ("The principle [that a municipal corporation is not liable for the acts of its officers] is obviously applicable to like torts committed by county officials.”). Wayne did not decide who is a county officer, but rather when a county is liable for the torts of officials whose status as county officers was not disputed. If Wayne supports the contention that a sheriff is a state officer, it equally supports the contention that all Georgia county officers are, by definition, state officers. Second, Wayne’s holding that counties are not liable for the civil rights violations of their officers is in direct conflict with Monell. This is not surprising, because the Georgia Supreme Court decided Wayne in 1976, two years before Monell. Under the previous doctrine of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), local governments could not be sued for the constitutional torts of their officers under § 1983. Id. at 187-93, 81 S.Ct. 473. To the extent that Wayne’s holding applies to federal causes of action, it would have been overruled by Monell, which would explain why no cases since have relied on it for this proposition. And to the extent that Wayne’s holding applies to state law claims, it is no more than a statement of Georgia's state sovereign immunity law — that local governments can only be sued when the General Assembly has waived the local entities' sovereign immunity — as stated in Gilbert v. Richardson, 264 Ga. 744, 452 S.E.2d 476, 479 n. 4 (1994), and its progeny.

.See Plurality Opinion at 1337-38.

. See Ga. Const. Art. IX, Sec. I, Par. IV; Wayne County v. Herrin, 210 Ga.App. 747, 437 S.E.2d 793 (1993).

. Plurality Opinion at 13 3 9-41.

. See Plurality Opinion at 1340 n. 26 (“[S]tate sovereign immunity has no application in federal court in § 1983 cases.”)

. The plurality’s response to this argument misunderstands my point. I am not concerned with whether any entity, be it county or sheriff, has or has not waived its state-law sovereign immunity. These are state-law issues, and we are ruling on a federal cause of action. The relevant point is that Georgia law accords sovereign immunily to the sheriff in his capacity as a representative of the county. In Gilbert, the Georgia Supreme Court allowed the sheriff to assert the defense of state-law sovereign immunity because, and only because, he was sued as a representative of the county. See Gilbert v. Richardson, 264 Ga. 744, 452 S.E.2d 476, 484 (1994) ("Because he is being sued in his official capacity, [Sheriff Millard] is entitled to the benefit of Walker County’s sovereign immunity defense.’’). The plurality attempts to circumvent this language and argues that the cases Cameron v. Lang, 274 Ga. 122, 549 S.E.2d 341 (2001), Seay v. Cleveland, 270 Ga. 64, 508 S.E.2d 159 (1998), and Cantrell v. Thurman, 231 Ga.App. 510, 499 S.E.2d 416 (1998) demonstrate that sheriffs draw their state-law immunity from a source other than the county. See Plurality Opinion at 1339-41. However, Gilbert is the lead case in this line of precedent, and it makes clear that sheriffs are immune from Georgia causes of action only as beneficiaries of their counties' immunity. The fact that Gilbert and Cameron involve motor vehicle insurance does not change this analysis. Seay does not change it either, because the Seay court explicitly based its finding of immunity on Gilbert. Cantrell v. Thurman, 231 Ga.App. 510, 499 S.E.2d 416 (1998) also does not change the analysis, because the immunity provision to which it refers is considered "a constitutional reservation of sovereign immunity to the counties of the State of Georgia” as well as to the state itself. Toombs County v. O’Neal, 254 Ga. 390, 330 S.E.2d 95, 96 (1985). Moreover, it is noteworthy that none of these decisions even consider the possibility that the plaintiffs had sued the wrong government for the sheriffs’ actions. In all of these cases, if the state, rather than the counties, were the real party in interest, the plaintiffs would have had to pursue their claims under the State Tort Claims Act, Ga.Code Ann. § 50-21-22, et seq., which covers "the State of Georgia and any of its officers, agencies, authorities, departments, commissions, boards, divisions, instru-mentalities, and institutions,” but not "counties, municipalities, school districts, other units of local government, hospital authorities, or housing and other local authorities.” Ga.Code Ann. § 50-21-22(5).

. The Georgia Supreme Court relied on the same constitutional provision applied in Gilbert, and on Gilbert itself, to extend state-law sovereign immunity to county commissioners in Woodard v. Laurens County, 265 Ga. 404, 456 S.E.2d 581, 582 (1995).

. The plurality’s attempt to distinguish Haywood fails. Haywood concerned a statute now found at Ga.Code Ann. § 45-9-21, which allows counties and other local governmental entities to set aside funds to defend their own officers. The county could not have relied on this statute to justify paying for the sheriff’s defense were the sheriff not one of the county's officers. Further, the statute specifically states that the term "county officer" as used therein "means the sheriff” and the other three constitutional county officers. Ga.Code Ann. § 45 — 9—21(e)(1).

.However, in Georgia, unlike in Alabama, the county can supplement this base salary. Ga.Code Ann. § 15-16-20(a)(3) (2001).

. The plurality is mistaken in its contention that the Georgia cases Board of Comm’rs of Randolph County v. Wilson, 260 Ga. 482, 396 S.E.2d 903 (1990), Chaffin v. Calhoun, 262 Ga. 202, 415 S.E.2d 906 (1992), and Warren v. Walton, 231 Ga. 495, 202 S.E.2d 405 (1973), stand for the proposition that "county sheriffs are subject to the control of the Georgia legislature.” Plurality Opinion at 1333. As the plurality correctly notes, these cases do hold that sheriffs are not employees of the county commission, and I do not contend otherwise. But the fact that the sheriff is not an employee of the county commission does not make him a state officer. See, e.g., Coffey v. Brooks County, 231 Ga.App. 886, 500 S.E.2d 341, 351 (1998), rev’d in part, on other grounds, Rowe v. Coffey, 270 Ga. 715, 515 S.E.2d 375 (1999), discussed infra note 38. Moreover, these three cases do not support the plurality’s argument of state control; rather, they refute it. Two of them explicitly state that sheriffs are county officers. See Randolph County, 396 S.E.2d at 904; Warren, 202 S.E.2d at 409. In the third, the Georgia Supreme Court described the sheriff as "an elected, constitutional officer” and upheld the county commission's authority to remove about forty-seven percent of the sheriffs budget. Chaffin, 415 S.E.2d at 907. All three of these cases represent the Georgia Supreme Court’s effort to strike a balance between the commission's budgetary power and the sheriff’s independence, which I discuss in greater detail below.

. The plurality addresses this argument by discussing the county commission's "head role” in the county government, based on factors such as its ability to enter into contracts for the county and its receipt of process served on the county. See Plurality Opinion at 1341-43. The county commission may very well be the final policymaking body for the county with respect to these functions. For instance, there is no question that the county commission has final authority regarding county fiscal policy, and its contractual prerogatives are but one facet of this power. However, this does not answer the question of whether the sheriff is the final policymaker for the county with respect to law enforcement or other policymaking areas. As the Supreme Court stated in Pembaur v. City of Cincinnati, 475 U.S. 469, 484, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), “the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level.” The Georgia Court of Appeals has explained the complicated relationship between the sheriff and the county commission:
[T]he sheriff is not an employee of a county, because his or her duties are separate and independent from the county as a governmental entity. The sheriff is not an entity of the State, either as an agency or department. The sheriff is a county officer; however, the sheriff is independent of and not answerable to the governing authorities of the county.
Coffey v. Brooks County, 500 S.E.2d at 351 (internal citations omitted).

. Thus, the plurality applies a sort of reverse "respondeat superior ” test to determine liability: to wit, because the sheriff is not answerable to or "controlled” by the board of commissioners, the county cannot be liable for the sheriff's constitutional violations. Of course, there is great irony in this holding because the Supreme Court has conversely held that local governments cannot be held liable for the actions of their officials who are employees without resorting to the “repeatedly rejected” respondeat superior doctrine. Praprotnik, 485 U.S. at 125, n. 2, 108 S.Ct. 915.

. The plurality ignores the reality that Georgia's county government is structured differently than Alabama's. Indeed, the Alabama Supreme Court itself has recognized this fact, finding that Georgia has made its sheriffs county officers. See Parker, 519 So.2d at 445 (citing Illinois, Tennessee, Florida, Georgia, and New York as "jurisdictions whose constitutions, unlike Alabama’s, clearly make sheriffs county officers”).

. See supra note 37.

. The sheriff likewise represents the county if he chooses to provide services for other entities. When a sheriff contracts to provide law enforcement, process service, and judgment execution to municipalities, compensation for these services goes to the county's general fund. Ga.Code Ann. § 15-16-13 (2002 Supp.); City of Lithia Springs v. Turley, 241 Ga.App. 472, 526 S.E.2d 364 (1999). A sheriff also receives a small sum for summoning jurors to service in city and state (but not county) courts, which also benefits the county coffers. Ga.Code Ann. § 15-16-21(a) (2001). These fees for summoning jurors to all courts other than those of the counties underscore sheriffs' county status, presumably reflecting the fact that the sheriff's general budget, since it is appropriated by the county itself, already includes reasonable provision for services provided to the county courts.